1  SMITH PATTEN
   SPENCER F. SMITH, ESQ. (SBN:236587)
2  DOW W. PATTEN, ESQ. (SBN: 135931)
   353 Sacramento St., Suite 1120
3  San Francisco, California 94111
   Telephone (415) 402-0084
4  Facsimile (415) 520-0104

5  Attorneys for Plaintiff
   RYAN RIVERA

6

7              IN THE UNITED STATES DISTRICT COURT

8           FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10

11  RYAN RIVERA, an individual,        )   Case No. 4:12-cv-01098 PJH
                                       )
12              Plaintiff,             )   PLAINTIFF'S OPPOSITION TO
                                       )   DEFENDANT'S MOTION FOR
13       vs.                           )   SUMMARY JUDGMENT
                                       )
14                                     )   Date:  October 30, 2013
    FEDEX CORPORATION, a Delaware      )   Time:  9:00 a.m.
15  Corporation, d.b.a. FedEx Express, ROBIN )   Location:  Courtroom 3 - 3rd Floor
    VAN GALDER, an individual; and DOES 1    )   1301 Clay Street, Oakland, CA 94612
16  through 10, inclusive,             )
                                       )
17              Defendants.            )
                                       )
18                                     )

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.     STATEMENT OF FACTS..................................................................1

II.    PLAINTIFF HAS PRESENT SUFFICIENT EVIDENCE TO ESTABLISH THE *PRIMA FACIE* ELEMENTS OF HIS CLAIMS..................................................4

       A.     Retaliation/Interference In Violation of FMLA.....................4

       B.     Retaliation In Violation of CFRA.......................................5

       C.     Disability Discrimination In Violation of the ADA and FEHA..............................5

       D.     Failure to Engage In The Interactive Process In Violation of FEHA.....................7

       E.     Failure To Accommodate In Violation Of The ADA and FEHA.............................7

       F.     Intentional Infliction of Emotional Distress...........................8

       G.     Plaintiff's Claims are Timely............................................9

III.   WHEN THE *PRIMA FACIE* ELEMENTS ARE PROVEN BY A PLAINTIFF, SUMMARY JUDGMENT SHOULD RARELY BE GRANTED....................................10

IV.    PLAINTIFF HAS PRESENTED SUFFICIENT EVIDENCE TO ALLOW A REASONABLE JUROR TO FIND THAT DEFENDANT'S LEGITIMATE BUSINESS REASON IS PRETEXTUAL..................................................11

       A.     FMLA Retaliation/Interference..........................................11

       B.     Plaintiff Has Presented Sufficient Evidence of Pretext...................12

              1.   Plaintiff's Medical Leave in 2009.........................12

              2.   FedEx's Decision to Reduce the number of Rampt Transport Drivers at the Facility Where Plaintiff Worked During Plaintiff's Medical Leave...........13

              3.   Plaintiff Advises fedEx He is Ready to Return to Work with Reasonable Accommodations..............................14

              4.   The Day Plaintiff Returns to Work from His FMLA/CFRA Leave He is Notified that He Will Have to Re-Bid for His Position............................15

              5.   Management's Lack of Experience with Shift Re-Bids...........................18

              6.   Plaintiff Requests Accommodation After Re-Bidding for His Position....19

              7.   Plaintiff's Limbo Position..............................20

i

8.   Plaintiff's Internal Complaints Regarding the Re-Bid and His

Displacement...........................................................................................20

V.      OBJECTIONS TO EVIDENCE....................................................................21

VI.     CONCLUSION............................................................................................25

## TABLE OF AUTHORITES

### CASES

*Abara v. Altec Indus.,*

838 F. Supp. 2d 998, 1000 (E.D. Cal. 2011)...............................................................6


*Allen v. Pac. Bell,*

348 F.3d 1113, 1114 (9th Cir. 2003)........................................................................7


*Agarwal v. Johnson,*

25 Cal. 3d 932, 603 P.2d 58, 160 Cal. Rptr. 141 (1979)........................................8


*Bachelder v. Am. W. Airlines, Inc.,*

259 F.3d 1112, 1124 (9th Cir. 2001)......................................................................11


*Bogner v. R&B Sys.,*

2011 U.S. Dist. LEXIS 50985 (E.D. Wash. May 12, 2011)....................................5


*Bonzani v. Shinseki,*

2013 U.S. Dist. LEXIS 141432, 18-19 (E.D. Cal. Sept. 30, 2013)..........................6


*Burnett v. LFW Inc.,*

472 F.3d 471, 477 (7th Cir. 2006)............................................................................4


*Camper v. Potter,*

2010 U.S. Dist. LEXIS 41966, at *6 (D. Ariz. 2010)...............................................5


*Cervantez v. J.C. Penney Co.,*

24 Cal. 3d 579, 593, 156 Cal. Rptr. 198, 595 P.2d 975 (Cal. 1979)........................9


*Chuang v. Univ. of Cal. Davis, Bd. of Trustees,*

iii

225 F.3d 1115, 1124 (9th Cir. 2000)..................................................................................4,10

*Cole v. Fair Oaks Fire Protection Dist.,*

43 Cal. 3d 148, 155 n.7, 729 P.2d 743, 746 n.7, 233 Cal. Rptr. 308, 312 n.7 (1987)....................8

*Cuiellette v. City of Los Angeles,*

194 Cal. App. 4th 757, 766, 123 Cal. Rptr. 3D 562 (2011)..........................................................7

*Davis v. Team Elec. Co.,*

520 F.3d 1080, 1089 (9th Cir. 2008)..................................................................................4,10

*Dudley v. Department of Transportation,*

(2001) 90 Cal. App. 4Th 255, 261.......................................................................................5

*Faust v. California Portland Cement Co.,*

58 Cal. Rptr. 3d 729, 745 (Cal. App. 2d Dist. 2007)..............................................................5,8

*Nunes v. Wal-Mart Stores, Inc.,*

164 F.3d 1243, 1246 (9th Cir. 1999)......................................................................................6

*Hoge v. Honda Am. Mfg., Inc.,*

384 F.3d 238, 244 (6th Cir. 2004).........................................................................................4

*King v. United Parcel Serv., Inc.,*

152 Cal. App. 4th 426, 442, 60 Cal. Rptr. 3d 359 (Cal. Ct. App. 2007)......................................8

*Lam v. University of Hawaii,*

40 F.3d 1551, 1563 (9th Cir. 1994).......................................................................................11

*Lowe v. Monrovia,*

775 F.2d 998, 1009 (9th Cir. Cal. 1985).................................................................10

*McGinest v. GTE Serv. Corp.,*

360 F.3d 1103, 1112 (9th Cir. 2004).....................................................................10

*Pinckney v. FRB of Dallas,*

2013 U.S. Dist. LEXIS 140334, at 26 (W.D. Tex. Sept. 30, 2013)..................................6

*Prilliman v. United Air Lines, Inc.,*

53 Cal. App. 4th 935, 950-51 (Cal. Ct. App. 1997)..............................................7,8

*Ray v. Henderson,*

217 F.3d 1234, 1243 (9th Cir. 2000)......................................................................5

*Reeves v. Sanderson Plumbing Prods.,*

530 U.S. 133 (2000)..............................................................................................10

*Sanders v. City of Newport,*

657 F.3d 772, 778 (9th Cir. 2011)...........................................................................4

*Schmidt v. Safeway Inc.,*

864 F. Supp. 991, 997, 3 AD Cas. (BNA) 1141, 1146-47 (D. Or. 1994).......................8

*Schneider v. TRW, Inc.,*

938 F.2d 986, 992 (9th Cir. 1990).............................................................................8

*Schnidrig v. Columbia Machine, Inc.,*

*80 F.3d 1406, 1410 (9th Cir. 1996)*..................................................................11

*Sisco-Nownejad v. Merced Community College Dist.,*

*934 F.2d 1104, 111 (9th Cir. 1991)*..................................................................11

*Throneberry v. McGehee Desha Cnty. Hosp.,*

403 F.3d 972, 978 (8th Cir. 2005)..................................................................4

Trerice v. Blue Cross of California,

209 Cal. App. 3d 878, 883, 257 Cal. Rptr. 338 (Cal. App. 1989)..................................................8

## FEDERAL STATUTES

Fed. R. Civ. P. 56(d)..................................................................1

Title VII..................................................................1

Section 2615(a)(1)..................................................................4,11

29 C.F.R. § 825.220(b)..................................................................4,11

29 C.F.R. § 1630.2(h)(1)..................................................................6

42 U.S.C. § 12102(4)(A)..................................................................6

## STATE STATUTES

Cal. Gov't Code § 12940(n)..................................................................7

Cal. Code Regs. tit. 2 § 7293.9(a) (2)..................................................................8

Plaintiff, Ryan Rivera, through his counsel of record herein, hereby opposes Defendant's motion for summary judgment and requests the Court deny the motion based upon Defendant's failure to meet its burden that it is entitled to judgment as a matter of law.

The operative First Amended Complaint, filed on May 9, 2012, alleges the following claims against Defendant Federal Express Corporation, ("Defendant" of "FedEx"): (1) disability discrimination in violation of Title VII including a claim for failure to accommodate; (2) retaliation in violation of FMLA; (3) disability discrimination in violation of FEHA including a claim for failure to accommodate; (4) retaliation in violation of CFRA; (5) intentional infliction of emotional distress and,; (6) failure to engage in the interactive process in violation of FEHA.

## I.   STATEMENT OF FACTS

On November 30, 1999 Plaintiff Ryan Rivera began working as a Material Handler at FedEx's Oakland Airport facility. In 2001, Plaintiff became a Ramp Transport Driver ("RTD"). (Patten Decl., Exh. "A"  Rivera Depo 11:22-12:7.) In July 2002, Plaintiff began to suffer from RSD syndrome in his thigh and knee. In June 2009, Plaintiff injured his knee outside of work. The injury required Plaintiff to undergo surgery in October of 2009. On November 30, 2009, Plaintiff's treating physician, Dr. Charlene Niizawa, requested workplace accommodations for Plaintiff's injured knee. (Patten Decl., Exh "B", 9-99.)  Dr. Niizawa restrictions included no driving a vehicle with a manual transmission, no lifting more than 10 pounds, and no climbing. (Patten Decl., Exh "B", 9-99.)

On January 18, 2010, Plaintiff contacted FedEx HCMP Manager, Kathy Cline, and informed her that he would be returning to work with the restrictions articulated in his doctor's November 2009 note. (Patten Decl., Exh "C",  9-102.) During the call Kathy Cline advised Plaintiff that FedEx would not provide him with any accommodations and that if he did not provide a doctor's note which released him to full duty Plaintiff would lose his position with the company. (*Id.*)   In order to save his job, Plaintiff obtained updated medical documentation which released him to work with no restrictions.  (Rivera Decl., ¶ 5)

When Plaintiff presented for work on January 20, 2010, he was informed that he would have to rebid for his position at the facility he was working at, due to the reduction in force.

1

(Rivera Decl., ¶ 6.) After the rebid, Plaintiff was informed that he would no longer be doing driver duties, but would be responsible for material handler duties and backing up other drivers when necessary. (Rivera Decl, ¶ 6.) On January 26, 2010, Plaintiff contacted Cline and indicated that while his doctor released him to full duty his knee was only 30% heeled and he would need reasonable accommodations. (Patten Decl., Exh "C", 9-102.)  Cline again informed Plaintiff that if he were to bring in updated medical documentation requesting an accommodation, FedEx would not accommodate him. (*Id.*) Cline also informed Plaintiff that if he were to bring an updated medical documentation requesting an accommodation, he would be forced to go on leave, Plaintiff would lose his job and Plaintiff would need to reapply for a position with the company. (*Id.*)

Beginning in February 2010, Plaintiff availed himself to the internal grievance procedures relating to his change in duties and change in shift. (Patten Decl., Exh "D",6-88-91, 9-6-10.)  On February 12, 2010, Plaintiff formally requested a reasonable accommodation and authorized his physicians to release medical information related to his request for accommodation. (Patten Decl., Exh "E", 9-80.) Rather than obtain Plaintiff's medical records Defendant informed Plaintiff that it would not consider an accommodation unless he obtained "medical documentation from [his] treating physician that indicates [he had] restrictions and limitations." (Patten Decl., Exh "F", 9-77)

Plaintiff subsequently informed FedEx that his doctor stated she was not able to provide an accommodation request and that his doctor informed him that the information provided was sufficient to make an accommodation request. (Patten Decl., Exh "F", 9-71) Cline responded and stated, "[t]he last note I have from your doctor indicates full duty with no restrictions, therefore the accommodation request will be based on your doctor indicating you have no physical restrictions." (*Id.*)

On March 17, 2010, Plaintiff was informed that the investigation into his internal EEO/GFTP complaint of February 12, 2010, was complete and that none of Plaintiff's allegations could be sustained. (Patten Decl., Exh "G", 9-46-49.)

2

On March 29, 2010, with no further response from Defendant, regarding his reasonable accommodation, Plaintiff again requested a workplace accommodation. (Patten Decl., Exh "H", 50-416) Additionally, on March 29, 2010, Plaintiff filed a third internal EEO/GFTP complaint regarding his change in duties and shifts assignment. (Patten Decl., Exh "I", 6-27-32.)

On March 31, 2010, Plaintiff received a letter from Managing Director at OAK RSO, Robin Van Galder, informing him that he was in receipt of his GFTP complaint. Van Galder threatened  Plaintiff that misuse of the Internal Complaint Process is a conduct issue which can result in discipline, up to and including termination. (Patten Decl., Exh "J", 6-25) Plaintiff was also informed by Van Galder and HR Advisor, Tamra Green, that his grievance was premature and could not be filed until he obtained a permanent position. (Rivera Decl., ¶ 19.) Based upon these threats, Plaintiff was in fear that if he made any further complaints or requests for accommodation he would be at risk of discipline or termination.  (*Id.*)

On October 11, 2011, Plaintiff was notified of his permanent position he immediately grieved the placement, pursuant to Van Galder's instruction, through the internal EEO/GFTP process on October 24, 2011.  (Patten Decl., Exh "K", 6-128; 7-7-10.) On October 27, 2011, Plaintiff received a letter from Van Galder, informing Plaintiff that he had read his GFTP Complaint and Plaintiff's fourth complaint, like the first and third complaint, would not be heard. (Patten Decl., Exh "L", 7-3-4.)

On December 5, 2011 and December 7, 2011, Plaintiff received his right-to-sue notices from the California Department of Fair Employment and Housing and the Equal Employment Opportunity Commission. (Rivera Decl., ¶ 22, Exh. "A".) On March 5, 2011, Plaintiff filed the instant action in the United States District Court for the Northern District of California. (Dkt # 1.) On May 9, 2012, Plaintiff filed the operative First Amended Complaint alleging the above stated causes of action. (Dkt # 3.)

/ / /

/ / /

/ / /

/ / /

PLAINTIFF OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT          12-cv-01098 PJH

## II.   PLAINTIFF HAS PRESENTED SUFFICIENT EVIDENCE TO ESTABLISH THE *PRIMA FACIE* ELEMENTS OF HIS CLAIMS

A plaintiff's burden at the *prima facie* stage is not onerous, *Hawn v. Exec. Jet Mgmt., Inc.,* 615 F.3d 1151, 1158 (9th Cir. 2010), and the necessary evidence is minimal. *Chuang v. Univ. of Cal. Davis, Bd. of Trustees,* 225 F.3d 1115, 1124 (9th Cir. 2000).

### A.   Retaliation/Interference In Violation Of FMLA

When a plaintiff alleges retaliation for exercise of FMLA rights, such a claim is properly analyzed as an interference claim under Section 2615(a)(1). *See Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir. 2001).

The *prima facie* elements for a FMLA interference claim are; (1) Plaintiff was eligible for the FMLA's protections, (2) Defendant was covered by the FMLA, (3) Plaintiff was entitled to leave under the FMLA, (4) Plaintiff provided sufficient notice of his intent to take leave, and (5) Defendant denied him FMLA benefits to which he was entitled." *Burnett v. LFW Inc*., 472 F.3d 471, 477 (7th Cir. 2006) (citing *Hoge v. Honda Am. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004)). The Ninth Circuit adopted this approach *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011); *see Bachelder*, 259 F.3d at 1125; 29 C.F.R. § 825.220(c).

Defendant's Motion does not analyze the *prima facie* elements of Plaintiff's FMLA interference claim, as the first four elements are undisputed.  The only element disputed by Defendant is whether Plaintiff received the benefits of FMLA when he was demoted and his shift changed shortly after his return from FMLA leave.[1]  Defendant argues that Plaintiff returned to

---

1   Pursuant to 29 U.S.C. Section 2614(a)(1)(A)-(B) an employee who "takes leave under section 2612 of this title for the intended purpose of the leave shall be entitled, on return from such leave—(A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." "The right to reinstatement guaranteed by 29 U.S.C. § 2614(a)(1) is the linchpin of the entitlement theory because 'the FMLA does not provide leave for leave's sake, but instead provides leave with an expectation that an employee will return to work after the leave ends.'" *Sanders*, 657 F.3d at 778 (quoting *Throneberry v. McGehee Desha Cnty. Hosp.*, 403 F.3d 972, 978 (8th Cir. 2005)). Thus, evidence that an employer failed to reinstate an employee who was out on FMLA leave to her original (or an equivalent) position establishes a prima facie denial of the employee's FMLA rights. *See* 29 C.F.R. § 825.220(b) (2008)(explaining that any violation of the FMLA constitutes interference with rights under the FMLA). Defendant denied Plaintiff this benefit of FMLA protection when it failed to reinstate Plaintiff to the position he held

---

4

his position is not supported by the evidence.  When Plaintiff returned he was required to re-bid for a position.  He was informed that as a result of the re-bid he would no longer be an RTD and his shift was going to be changed from weekdays to weekends and from days to graveyard.  Plaintiff was informed that he would be required to work in this position until he was offered a permanent RTD position. (Cunningham, 33:9-19; Cline, 28:4-29:16; Van Galder, 37:11-19).  This deprived Plaintiff of the restoration to his position mandated by FMLA.

### B.      Retaliation In Violation Of CFRA

A *prima facie* retaliation claim under CFRA requires (1) a defendant employer covered by CFRA; (2) an CFRA-eligible plaintiff; (3) an exercise of the right to take leave for a qualifying CFRA purpose, and (4) an adverse employment action, such as termination, fine, demotion, or suspension because of the exercise of the right to CFRA leave. *Dudley v. Department of Transportation* (2001) 90 Cal. App. 4th 255, 261.

Again, Defendant's motion does not analyze the *prima facie* elements of this claim, as all but the fourth element are undisputed.   Only fourth element—adverse action—is in dispute.  As set forth above, this element is present as Plaintiff suffered adverse action when he returned from leave.[2]

### C.      Disability Discrimination In Violation Of The ADA And FEHA

To establish a *prima  facie* case of disability discrimination under the ADA and FEHA a plaintiff must show that (1) he is a disabled person within the meaning of the ADA and FEHA; (2) he is otherwise qualified to do his job; and (3) Plaintiff suffered an adverse employment

---

prior to his FMLA leave.

2   Courts in the Ninth Circuit have held that a change in an employee's shift constitutes an adverse employment action. *See Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000) (holding that retaliation is an adverse employment action "if it is reasonably likely to deter employees from engaging in protected activity"); *Camper v. Potter*, 2010 U.S. Dist. LEXIS 41966, at *6 (D. Ariz. 2010) (finding that the employer changing the employee's days off from Sunday/Monday to Monday/Tuesday constituted an adverse employment action under the prima facie elements of Title VII retaliation); *Bogner v. R&B Sys.*, 2011 U.S. Dist. LEXIS 50985 (E.D. Wash. May 12, 2011) (holding that a 10-minute shift in schedule was not adverse but opining that "[a] shift change can constitute an adverse action, for example moving a day shift worker to a 'graveyard' shift in retaliation for pursuing a FLSA claim would likely constitute an adverse action.").

5

action because of his disability. *see Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999); *Faust v. California Portland Cement Co.*, 58 Cal. Rptr. 3d 729, 745 (Cal. App. 2d Dist. 2007).

Defendant's assertion that Plaintiff cannot meet any of these prongs is contrary to controlling authority. Plaintiff was, and is, disabled under the law, he is a qualified individual with a disability and he suffered an adverse employment action when Defendants demoted and his shift was changed. *See supra*, fn. 1.

Defendant argues that as a matter of law Plaintiff's knee injury is not a disability. However, the ADA Amendment Act of 2008 ("ADAAA") provides that the definition of disability "shall be construed in favor of broad coverage." *See Bonzani v. Shinseki*, 2013 U.S. Dist. LEXIS 141432, 18-19 (E.D. Cal. Sept. 30, 2013); *Pinckney v. FRB of Dallas*, 2013 U.S. Dist. LEXIS 140334, at 26 (W.D. Tex. Sept. 30, 2013) (quoting 42 U.S.C. § 12102(4)(A)). The EEOC regulations further establish that "'[t]he primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether an individual's impairment substantially limits a major life activity.'" *Bonzani*, 2013 U.S. Dist. LEXIS 141432, at 22 (quoting 29 C.F.R. § 1630.2(j)(1) (iii)). "A knee injury is *doubtless* a 'physical impairment' within the meaning of the statutory language of the ADA." *Pinckney*, 2013 U.S. Dist. LEXIS 140334, 23-24 (emphasis added) (quoting 29 C.F.R. § 1630.2(h)(1)). Indeed, a knee injury may constitute a qualifying "disability" within the meaning of the ADA and FEHA. *See Abara v. Altec Indus.*, 838 F. Supp. 2d 998, 1000 (E.D. Cal. 2011); *Bonzani*, 2013 U.S. Dist. LEXIS 141432, at 16-17, 19, 20, 26 (denying summary judgment to employer in part because plaintiff did not perceive discrimination until he returned from leave for surgery on his existing knee injury, which substantially limited his ability to perform a manual task necessary for his job performance).

Further, Defendant has failed to meet his burden as to the elements as Plaintiff is limited in the major life activities of walking, sleeping, and standing for extended periods of time (Rivera Decl. ¶23). Defendant's claim that Plaintiff played football and could work and is therefore not covered by the ADA and FEHA is not supported by the evidence (Rivera, 357:8-

359:25).   Defendant admits that Plaintiff is qualified for his position; therefore, the only

remaining issue is whether Defendant has met its burden to demonstrate that no adverse action

occurred.  As set forth above, Defendant cannot meet that burden.

### D.        Failure To Engage In The Interactive Process In Violation Of FEHA

Under FEHA, it is unlawful for an employer "to fail to engage in a timely, good faith,

interactive process with an employee to determine effective reasonable accommodations, if any,

in response to a request for reasonable accommodation by an employee or applicant with a

known physical or mental disability." Cal. Gov't Code § 12940(n). "[A]n employer who knows

of the disability of an employee has an affirmative duty to make known to the employee other

suitable job opportunities with the employer and to determine whether the employee is interested

in, and qualified for, those positions, if the employer can do so without undue hardship or if the

employer offers similar assistance or benefit to other disabled or nondisabled employees or has a

policy of offering such assistance or benefit to any other employees." *Prilliman v. United Air

Lines, Inc.*, 53 Cal. App. 4th 935, 950-51 (Cal. Ct. App. 1997).

Defendant's motion alleges that Plaintiff is at fault for any breakdown in the interactive

process. As set forth above, a material issue of fact exists as to who is at fault for the breakdown

in the interactive process.   Substantial evidence support's Plaintiff's position that Defendant is at

fault because Defendant essentially stated that if Plaintiff returned with any medical information

containing any accommodation, that Plaintiff would lose his job.(Patten Decl., Exh "C", 9-102.)

### E.        Failure To Accommodate In Violation Of The ADA and FEHA

"The essential elements of a failure to accommodate claim under FEHA [and the ADA]

are: (1) the plaintiff has a disability covered by [FEHA or the ADA]; (2) the plaintiff is a

qualified individual (i.e., he or she can perform the essential functions of the position); and (3)

the employer failed to reasonably accommodate the plaintiff's [known] disability."*Cuiellette v.

City of Los Angeles*, 194 Cal. App. 4th 757, 766, 123 Cal. Rptr. 3d 562 (2011)(citation and

internal quotation marks omitted); *see also Allen v. Pac. Bell*, 348 F.3d 1113, 1114 (9th Cir.

2003). The duty to accommodate arises once the employer knows of a qualified employee's

disability. *Prilliman v. United Air Lines, Inc.*, 53 Cal. App. 4th 935, 950-51, 62 Cal. Rptr. 2d 142

7

(1997) An employer's failure to provide reasonable accommodation is a violation of the statute even in the absence of an adverse employment action.  *King v. United Parcel Serv., Inc.*, 152 Cal. App. 4th 426, 442, 60 Cal. Rptr. 3d 359 (Cal. Ct. App. 2007).

An employer "knows an employee has a disability when the employee tells the employer about his condition, or when the employer otherwise becomes aware of the condition, such as through a third party or by observation." *Faust,* 150 Cal. App. 4th  at 887; *Schmidt v. Safeway Inc.*, 864 F. Supp. 991, 997, 3 AD Cas. (BNA) 1141, 1146-47 (D. Or. 1994) ("statute does not require the plaintiff to speak any magic words. . . The employee need not mention the ADA or even the term 'accommodation.'")  A "reasonable accommodation" under FEHA and ADA may include "job restructuring, part-time or modified work schedules . . . and other similar accommodations for individuals with disabilities." Cal. Gov't Code § 12926(n)(2); Cal. Code Regs. tit. 2 § 7293.9(a) (2); 29 CFR 1630.2.

As set forth above, Plaintiff is covered by the FEHA and ADA and has a disability as defined therein.  Defendant alleges that Plaintiff has no limitations and thus is not in need of an accommodation.  That argument is not supported by the evidence. (Rivera Decl., ¶6; Patten Decl., Exh "C", 9-102).

### F.  Intentional Infliction Of Emotional Distress

A *prima facie* case of intentional infliction of emotional distress "requires (1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering and (4) actual and proximate causation of the emotional distress." *Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal. 3d 148, 155 n.7, 729 P.2d 743, 746 n.7, 233 Cal. Rptr. 308, 312 n.7 (1987) (citing *Agarwal v. Johnson*, 25 Cal. 3d 932, 603 P.2d 58, 160 Cal. Rptr. 141 (1979)).

Under California law, a *prima facie* case for intentional infliction of emotional distress requires a plaintiff to prove that a defendant's conduct was "outrageous." *See e.g.*, *Schneider v. TRW, Inc.*, 938 F.2d 986, 992 (9th Cir. 1990); *Trerice v. Blue Cross of California*, 209 Cal. App. 3d 878, 883, 257 Cal. Rptr. 338 (Cal. App. 1989). Conduct is deemed outrageous if it is "so

extreme as to exceed all bounds of that usually tolerated in a civilized community." *Cervantez v. J.C. Penney Co.*, 24 Cal. 3d 579, 593, 156 Cal. Rptr. 198, 595 P.2d 975 (Cal. 1979).

Threatening to fire someone if they return from a doctor with a medical need for an accommodation is extreme and outrageous conduct. (Patten Decl., Exh "C", 9-102.) Plaintiff continues to suffer substantial emotional distress requiring treatment. (Rivera Depo. 315:10-316:25; 318:21-25).

### G. Plaintiff's Claims are Timely.

Plaintiff's claims are timely. Any delay is subject to equitable tolling, which eases the pressure on parties "concurrently to seek redress in two separate forums with the attendant danger of conflicting decisions on the same issue." (*Olson v. County of Sacramento* (1974) 38 Cal.App.3d 958, 965) By alleviating the fear of claim forfeiture, it affords grievants the opportunity to pursue informal remedies, a process we have repeatedly encouraged. (*E.g., Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1091; *Richards v. CH2M Hill, Inc*. (2001) 26 Cal.4th 798, 820–821). Rivera promptly filed his claim with FedEx 13 days after he was informed that he was losing his Driver position and his shift was being changed, well within the limitations period, and the defendants in both the administrative action and the judicial action were the same. Plaintiff was then told he could not grieve the rebid until he was in a permanent position and he would be disciplined if he filed another claim. Here, Plaintiff's claims in the instant action are almost identical and involved the treatment of Plaintiff after he returned from disability leave. FedEx received prompt notice of the disability claim and an opportunity to investigate it. (Cunningham Decl., ¶20; Rivera Decl. ¶19).

When an employee voluntarily pursues an internal administrative remedy prior to filing a complaint under the ADA, FEHA, CFRA, and FMLA, the statute of limitations on the claims is subject to equitable tolling. The equitable tolling of statutes of limitations is a judicially created, nonstatutory doctrine. (*See Elkins v. Derby* (1974) 12 Cal.3d 410, 420 & fn. 9 *see also Brown v. Valoff*, 422 F.3d 926, 942-43 (9th Cir. 2005). It is "designed to prevent unjust and technical forfeitures of the right to a trial on the merits when the purpose of the statute of limitations—timely notice to the defendant of the plaintiff's claims—has been satisfied." (*Appalachian Ins.*

*Co. v. McDonnell Douglas Corp.* (1989) 214 Cal.App.3d 1, 38) Where applicable, the doctrine will "suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness." (*Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 370.)  This is precisely what has occurred here when Plaintiff brought his GFTs.

### III.     WHEN THE *PRIMA FACIE* ELEMENTS ARE PROVEN BY A PLAINTIFF SUMMARY JUDGMENT SHOULD RARELY BE GRANTED.

Once a *prima facie* case is established either by the introduction of actual evidence or reliance on the McDonnell Douglas presumption, summary judgment for the defendant will ordinarily not be appropriate on any ground relating to the merits because the dispute is the "elusive factual question of intentional discrimination,"*Lowe v. Monrovia*, 775 F.2d 998, 1009 (9th Cir. Cal. 1985) Moreover, when a plaintiff has established a *prima facie* inference of disparate treatment through direct or circumstantial evidence of discriminatory intent, he/she will necessarily have raised a genuine issue of material fact with respect to the legitimacy or bona fides of the employer's articulated reason for its employment decision. (*Id.*)

A plaintiff "need produce very little evidence in order to overcome an employer's motion for summary judgment" because "the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately conducted by a factfinder, upon a full record." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (quoting *Chuang v. Univ. of Cal. Davis Bd. of Trustees*, 225 F.3d 1115, 1124 (9th Cir. 2000)(quotation marks omitted)); *see also McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004) ("In evaluating motions for summary judgment in the context of employment discrimination, we have emphasized the importance of zealously guarding an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses.").

In the employment context, the U.S. Supreme Court, in *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133 (2000), articulated the implications of this rule as it pertains to evaluating the testimony of interested witnesses: "[A]lthough the court should review the record as a whole,

10

it must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses." *Id*. at 151.  *See Schnidrig v. Columbia Machine, Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996) (courts require little evidence to deny summary judgment in a discrimination case because the ultimate question is one that can only be resolved through a searching inquiry – one that is most appropriately conducted by the factfinder, upon a full record) (citations omitted); *see also Lam v. University of Hawaii,* 40 F.3d 1551, 1563 (9th Cir. 1994) (quoting *Sisco-Nownejad v. Merced Community College Dist.*, 934 F.2d 1104, 111 (9th Cir. 1991).   In light of the fact that Plaintiff has established his *prima facie* claims, it would be reversible error for the Court to grant summary judgment which would require the Court to make impermissible credibility determinations.

**IV.     PLAINTIFF HAS PRESENTED SUFFICIENT EVIDENCE TO ALLOW A REASONABLE JUROR TO FIND THAT DEFENDANT'S LEGITIMATE BUSINESS REASON IS PRETEXTUAL.**

### A.      FMLA Retaliation/Interference

In *Bachelder v. American West Airlines, Inc.*, 259 F.3d 1112 (9th Cir. 2001), the Ninth Circuit found that FMLA regulation 29 C.F.R. 825.220(c) was the controlling authority for a wrongful discharge claim.  Section 825.220(c) states, in pertinent part, that "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." The Court concluded that, although 825.220(c) speaks in terms of discrimination, it implements the "interference with the exercise of rights" section of the statute, 29 U.S.C. 2515(a)(1), and not the anti-retaliation or anti-discrimination sections, 2615(a)(2) and (b). The Ninth Circuit, therefore, found its analysis "fairly uncomplicated;" refused to apply traditional anti-discrimination burden-shifting frameworks; and applied a more plaintiff-friendly standard of proof to wrongful discharge claims. That standard requires the plaintiff to prove only that his or her taking of FMLA-protected leave constituted a negative factor in the employment actions. *Id*. at 1125.

11

**B.      Plaintiff Has Presented Sufficient Evidence of Pretext**

Plaintiff was an RTD  for five years and earned the prime shift of Monday through Friday 1:00 pm to 9:30 pm. (Patten Decl., Exh. "A", Rivera Depo., 11:22-12:7; 13:8-17; 19:14:21.) When Plaintiff became an RTD, Plaintiff began reporting to Operations Manager Steven Chu. (Patten Decl., Exh. "M   ", Chu Depo.,11:2-7.) Plaintiff testified that he frequently had negative interactions with Mr. Chu. (Patten Decl., Exh. "A", Rivera Depo., 41:23-43:14.) Plaintiff further testified that Chu treated him unfairly mostly when dealing with his FMLA. Plaintiff testified that FedEx didn't want him using FMLA on some issues such as seeing a dentist for a root canal. (Patten Decl., Exh. "A", Rivera Depo., 43:15-44:1.)   Plaintiff also testified that when he first injured his knee Chu requested that Plaintiff not go out on FMLA for his knee until after peak season. *(Id.)*

**1.      Plaintiff's Medical Leave in 2009.**

On June 1, 2009, Rivera was diagnosed with a meniscus current tear knee. As a result of the surgery to repair his knee Rivera was on FMLA leave from October 20, 2009 to November 29, 2009.  During Plaintiff's leave and recovery phase he was treated primarily by his surgeon, Dr. Dughman.   Cline testified she never spoke to Dr. Dughman.  (Patten Decl., Exh. "N ", Cline Depo., 31:12-13.)

During discovery in this matter Plaintiff's managers and supervisors disavowed any knowledge about the specifics of Plaintiff's surgery.  Chu testified that all he knew about Plaintiff's leave in October of 2009 was that he needed days off to take medical "[L]OA." Chu went on to testify that he did not know that Plaintiff had surgery.  (Patten Decl., Exh. "M ", Chu Depo., 19:8-23.)  Chu testified that he did not know about Plaintiff's surgery because he was not allowed to look at medical records that were submitted to HR Advisor, Kathy Cline or the HCMP

departments.  (Patten Decl., Exh. "M", Chu Depo., 39:7-15.) After being confronted with

documentation that he was in fact aware of Plaintiff's surgery, Chu admitted that he was aware of

Rivera's surgery when he wrote in an e-mail stating, "[j]ust talked to Ryan on the phone...And he

told me that his left knee is recovering after the surgery" (Patten Decl., Exh. "M", Chu Depo.,

40:1-9.) Senior Manager, Kelly Cunningham, testified that he knew Plaintiff was out for knee

surgery but did not know why.  (Patten Decl., Exh. "O", Cunningham Depo. 17:20-18:2.)

> ### 2.    Fedex's Decision to Reduce the Number of Ramp Transport Drivers at the Facility Where Plaintiff Worked During Plaintiff's Medical Leave.

Unbeknownst to Plaintiff, major changes were happening regarding his position during

his leave of absence.  Cunningham testified that in 2010 Defendant experienced a business

downturn that would result in a necessary reorganization.   (Patten Decl., Exh. "O ",

Cunningham Depo., 10:23-11:9.)   Managing Director, Robin Van Galder, testified that in 2010

there was a recession causing flight operations to decrease by 11 or 12 on one shift alone.

(Patten Decl., Exh. "P ",  Van Galder Depo., 13:4-18.) Van Galder testified that at the facility

where Plaintiff worked there were 17 Ramp Transport Drivers drivers and the facility did not

need that many.  (*Id.*)

Despite the loss of flight operations only Plaintiff's facility and job category were effected

by the economic downturn.  Mr. Van Galder testified that OAKH was the only facility to have a

rebid.  (Patten Decl., Exh. "P",  Van Galder Depo., 18:19-19:1.)  Van Galder testified that more

than 50% of the work groups schedule was going to change, either based on start times or days

of the week worked. Van Galder testified that the work group of 17 RTD drivers had to be

affected, rather than the facility as a whole.  (Patten Decl., Exh. "P ",  Van Galder Depo., 34:24-

35:1.) Van Galder testified that when the shift went up for rebid, there were eight positions to

remain at OAKH, four positions at OAKRO, and five excess drivers that would remain at OAKH

until an opening came at one of those two places.  (Patten Decl., Exh. "P ", Van Galder Depo.

31:10-17). Van Galder further testified that the remaining five excess positions were positions in which RTD drivers "could continue doing RTD work as a yard mule, they would work as a material handler, they could do any functions that they had there." (Patten Decl., Exh. "P", Van Galder Depo., 40:9-16.)

### 3. Plaintiff Advises FedEx He is Ready to Return to Work with Reasonable Accommodations.

Without the knowledge that he would more than likely lose his position upon his return from medical leave, Plaintiff informed Defendant he was ready to return to work with reasonable accommodations.  Cline stated that while Plaintiff was on FMLA leave for about 92 days, from October 20, 2009 to January 18, 2010, she does not recall speaking with him about an accommodation or engaging in the interactive process.  (Patten Decl., Exh. "N", Cline Depo. 16:3-16, 19-22.)

On January 18, 2010, Plaintiff contacted FedEx HCMP Manager, Kathy Cline, and informed her that he would be returning to work with the restrictions articulated in his doctor's November 2009 note. (Patten Decl., Exh "C",  9-102.) During the call Kathy Cline advised Plaintiff that FedEx would not provide him with any accommodations and that if he did not provide a doctor's note which released him to full duty Plaintiff would lose his position with the company. (*Id.*)   In order to save his job, Plaintiff obtained updated medical documentation which released him to work with no restrictions.  (Rivera Decl., ¶ 5.)

Cline testified that Plaintiff was not returned to work on modified duty on January 19, 2010 because she unsure if management had anything for him to do with the restrictions.  (Patten Decl., Exh. "N",  Cline Depo., 38:4-10.)  Cline testified that she did not inform Plaintiff of the reorganization at this time because she was unaware Oakland hub was going to lose RTD positions, or that Plaintiff's position was going to be eliminated when he returned from FMLA leave.  (Patten Decl., Exh. "N", Cline Depo. 14:10-20.) Cline initially testified that she was not

aware that Plaintiff's job duties were changed; however when presented with a document she prepared she changed her testimony. (Patten Decl., Exh. "N", Cline Depo., 26:16-27:11.)

**4.    The Day Plaintiff Returns to Work from His FMLA/CFRA Leave He is Notified that He Will Have to RE-Bid for His Position.**

Upon returning on January 20, 2010, Plaintiff was notified  for the first time of the company's reorganization. (Patten Decl., Exh. " A", Rivera Depo 17:14-25; Rivera Decl., ¶ 6.) After the rebid, Plaintiff was informed that he would no longer be doing driver duties, but would be responsible for material handler duties and backing up other drivers when necessary. (Rivera Decl, ¶ 6.)

During discovery Plaintiff's managers and supervisors attempted to explain why they did not inform Plaintiff, during his medical leave, the possible change in his duties and responsibilities.  For example, Cunningham testified that he was aware Plaintiff was out on disability leave prior to the decision to rebid the positions (Patten Decl., Exh. " O", Cunningham Depo. 23:22-25.) Cunningham testified that it was understanding that Plaintiff was supposed to return to the position he left and that he did return to that position. (Patten Decl., Exh. " O", Cunningham Depo. 24:1-11.)  However, Cunningham testified that he was instructed not to inform Plaintiff about the changes at the facility so as not to disrupt his FMLA recovery was accurate.  (Patten Decl., Exh. "O", Cunningham Depo. 32:16-25.)  Van Galder admitted that it was him that informed Cunningham not to tell Plaintiff about the rebid while he was out on FMLA leave .  (Patten Decl., Exh. " P", Van Galder Depo., 42:25-43:3.) Chu testified that he had no idea why Plaintiff was not informed of the scheduling changes while he was out on leave. (Patten Decl., Exh. "M", Chu Depo. 64:7-13, 16.)

Cunningham testified that when Plaintiff returned from FMLA leave he had a meeting with Chu and Plaintiff in which Cunningham discussed "we're going to go downsize and to rebid for all the positions." (Patten Decl., Exh. " O", Cunningham Depo., 33:9-19.)  Van Galder

15

testified that Plaintiff told him that he felt the re-bid was unfair. Van Galder could not remember

the specifics of any conversation just that they had numerous conversations and that Plaintiff was

not happy with changing his shift and he voiced his displeasure. (Patten Decl., Exh. "P", Van

Galder Depo., 43:17-25.)

Despite Plaintiff voicing his concerns about the rebid process the supervisors and

managers handling the rebid process refused to follow well established FedEx policies regarding

rebids. Cunningham testified that upper management did not utilize the JCAT system in

rebidding the RTD driver positions in January 2010, because they used the work assignment

process. (Patten Decl., Exh. "O", Cunningham Depo. 21:14-24.)

FedEx testified that there were a total of four "total shift bids" between 2003 and 2010,

San Diego in 2004, Anchorage Alaska in 2007, Anchorage Alaska in 2010 and Ontario in 2003.

(Patten Decl., Exh. "Q", Carter 30(b)(6) Depo., 6:4-7:1.) FedEx testified that there was no total

shift rebid at the OAKH facility. (Patten Decl., Exh. " Q", Carter 30(b)(6) Depo., 7:2-13.)

FedEx testified that total rebids or periodic rebids are discouraged because it disrupts

employees lives and employees lives are important to the company. (Patten Decl., Exh. "R",

Johnson 30(b)(6) Depo., 16:23-17:11.) FedEx further testified that the proper procedure to follow

when there are too many employees and not enough positions at a facility, would be the staffing

effectiveness process. (Patten Decl., Exh. "R", Johnson 30(b)(6) Depo., 15:12-25.) FedEx did

not follow its articulated procedures for staffing effectiveness process when it displaced Plaintiff

after his return from FMLA/CFRA leave[3].

---

3   The AGFS People Best Practices Work Assignment Process ("Work Assignment Process")
and Policy 4-95 in the People Manual ("Policy 4-95") both relate to shift bids and
reorganizations, though some reorganizations can occur without a shift bid. (Johnson 30(b)(6)
Depo., 6:25-7:5, 6-9; 21:1-6). A reorganization can simply change to whom the employee
reports and thus does not necessarily include a shift change. (Johnson 30(b)(6) Depo., 8:13-
9:12). Neither policy defines when it is proper to do a reorganization rather than a total shift
rebid. (Johnson 30(b)(6) Depo., 7:10-22).

16

On January 21, 2010 Plaintiff requested to see the policy regarding the reorganization to both Cunningham and Tamra Green. (Patten Decl., Exh. " A", Rivera Depo 76:9-17.) Neither Cunningham nor  Green provided Plaintiff a policy under which the reorganization was being implemented. (Patten Decl., Exh. "A", Rivera Depo 75:16-76:1.)  Plaintiff testified that Green and Cunningham responded to his request by saying things weren't going so well, that they

---

The Work Assignment Process controls bidding for a particular facility when there is a position that is "open," meaning vacated, newly created, or modified.  (Johnson 30(b)(6) Depo., 13:8-12).  The policy dictates that a total rebid is when everyone in a bidding group is required or expected to bid.  (Johnson 30(b)(6) Depo., 13:15-20).  A total bid rebid should occur when a majority of the shifts are affected, if a shift changes by day of the week, if a majority of shifts have a substantial change of two hours (greater than two hours to the start or end times), or if the minority of the days of the week change in excess of four hours.  (Johnson 30(b)(6) Depo., 8:13-9:12; 19:4-16).  When a manager is looking to create or develop a bid, that person must identify the proposed positions that are open and then start to look at all of the proposed schedules, which may increase or decrease. (Johnson 30(b)(6) Depo., 13:21-14:12).

The Location Work Assignment Plan is a supplement to the Work Assignment Process which mandates that each individual location will document and permanently post a work assignment plan with specific managers and their assignments identified.  (Johnson 30(b)(6) Depo., 17:19-18:20).

In a situation where jobs are eliminated, the Staff Effectiveness Process applies, which requires engineering support and the evaluation of management rationale.  (Johnson 30(b)(6) Depo., 14:13-15:3, 12-25).  By contrast, the total rebid process can relocate employees to the same job classification within 50 miles of the domicile area, whereas the Staffing Effectiveness Process is more extensive and results in terminating employees or finding other positions for them at lower pay codes.  (Johnson 30(b)(6) Depo., 16:1-13).  The Staff Effectiveness Process discourages frequent total rebids or periodic rebids so as not to disrupt the employees' lives.  (Johnson 30(b)(6) Depo., 16:23-17:11).

HFS People Best Practice Work Assignment Chapter relates to shift changes.  (Johnson 30(b)(6) Depo., 10:11-15).  The intent of the policy is to force managers to determine why they need to change a shift, rather than just doing it arbitrarily.  (Johnson 30(b)(6) Depo., 10:16-11:6).  To change a shift, they need three levels of HR approval, as well as the approval of a managing director of the AGFS organization and a business rationale that includes a staffing analysis.  (Johnson 30(b)(6) Depo., 11:7-14).  A staffing analysis entails that the managers contacting the matrix engineers to determine staffing levels based off productivity, volume, routes, systems form, and anything else that would impact that bidding group.  (Johnson 30(b)(6) Depo., 11:15-20).

needed Plaintiff to do the things they were asking of him and that he was lucky to have a job. (Patten Decl., Exh. "A", Rivera Depo 80:8-13.)

### 5.     Management's Lack of Experience with Shift Re-Bids.

Van Galder testified that he did not have any role in conducting the rebid for the shifts and that Cunningham conducted the rebid for the shifts.  (Patten Decl., Exh. " P", Van Galder Depo. 32:6-10.)  Cunningham testified that this was the first rebid he was aware during his 35 years with the company.   (Patten Decl., Exh. "O",  Cunningham Depo. 87:20-25.)  Chu testified that he has never done a shift bid before and has only utilized JCATS to fill positions.   (Patten Decl., Exh. "M",  Chu Depo. 31:22-32:20.)  Van Galder testified that this was the first time there has been a total rebid for a location.   (Patten Decl., Exh. "P", Van Galder Depo. 11:9-13.)

Inexplicably, only Plaintiff's workgroup was affected by the economic downturn.  At the time of the rebid,  was responsible for two facilities in Sacramento, two in Reno, two in Hawaii and two in Oakland. (Patten Decl., Exh. " P", Van Galder Depo., 13:19-22; 14:1-5.)  All  of Van Galder's facilities had RTD drivers. (Patten Decl., Exh. " P", Van Galder Depo., 15:7-9.)   None of Mr. Van Galder's other facilities went through the same rebid process.  (Patten Decl., Exh. "P", Van Galder Depo., 18:12-14.) None of Mr. Van Galder's other facilities lost drivers as a result of the recession.  (Patten Decl., Exh. "P", Van Galder Depo., 18:15-18.)

Cunningham testified that of the six senior managers at OAKRO he was the only one dealing with  a shift rebid.  (Patten Decl., Exh. "O", Cunningham Depo. 88:1-90:13.) Cunningham testified that he was unaware of any other positions at the facility going through rebids.   (Patten Decl., Exh. " O", Cunningham Depo., 79:1-11.) Chu testified that there was no shift bid for the material handlers that reported to him.   (Patten Decl., Exh. "M ",  Chu Depo., 22:6-10.)

---

Policy 4-95 also applies to shift changes by empowering managers to provide all work assignments, of which, the Work Assignment Process spells out the steps one should follow. (Johnson 30(b)(6) Depo., 20:3-13).

18

**6.      Plaintiff Requests Accommodation After Re-Bidding for His Position.**

On January 26, 2010, Plaintiff contacted Cline and indicated that while his doctor released him to full duty his knee was only 30% healed and he would need reasonable accommodations. (Patten Decl., Exh "C", 9-102.)  Cline again informed Plaintiff that if he were to bring in updated medical documentation requesting an accommodation, FedEx would not accommodate him. (*Id.*) Cline also informed Plaintiff that if he were to bring an updated medical documentation requesting an accommodation, he would be forced to go on leave, Plaintiff would lose his job and Plaintiff would need to reapply for a position with the company. (Patten Decl., Exh "C", 9-102.)

On February 12, 2010, Plaintiff formally requested a reasonable accommodation and authorized his physicians to release medical information related to his request for accommodation. (Patten Decl., Exh "E", 9-80.) Rather than obtain Plaintiff's medical records Defendant informed Plaintiff that it would not consider an accommodation unless he obtained "medical documentation from [his] treating physician that indicates [he had] restrictions and limitations." (Patten Decl., Exh "F", 9-77.)

Plaintiff subsequently informed FedEx that his doctor stated she was not able to provide an accommodation request and that his doctor informed him that the information provided was sufficient to make an accommodation request. (Patten Decl., Exh "F", 9-71.) Cline responded and stated, "[t]he last note I have from your doctor indicates full duty with no restrictions, therefore the accommodation request will be based on your doctor indicating you have no physical restrictions." (*Id.*)

On March 29, 2010, with no further response from Defendant, regarding his reasonable accommodation, Plaintiff again requested a workplace accommodation. (Patten Decl., Exh "H", 50-416.)

19

### 7.   Plaintiff's Limbo Position

On March 1, 2010, Plaintiff was demoted to a material handler position and his hours were changed to 4:00 a.m. to 13:00. (Patten Decl., Exh. "S" , 7-30-31.) Plaintiff was required to remain in this position until he was offered a permanent RTD position.

### 8.   Plaintiff's Internal Complaints Regarding the Re-Bid And His Displacement.

Beginning in February 2010, Plaintiff availed himself to the internal grievance procedures relating to his change in duties and change in shift. (Patten Decl., Exh "D",6-88-91, 9-6-10.) Van Galder testified that as the managing director, he heard step one of Plaintiff's second GFT filed on February 12, 2010. (Patten Decl., Exh. " P",  Van Galder Depo. 32:14-22.)  Van Galder testified that Plaintiff's first GFT was not heard as ineligible because the stated issue, job selection, was not taking place at that time.  (Patten Decl., Exh. "P",  Van Galder Depo. 32:23-33:8.) Van Galder testified that he heard Plaintiff's second GFT, which concerned the work assignment process and how it was applied.  (Patten Decl., Exh. " P",  Van Galder Depo. 33:9-16.) Van Galder testified that in upheld management's decision in Plaintiff's second GFT because the process was handled properly.  (Patten Decl., Exh. "P ",  Van Galder Depo. 33:17-20.)

Van Galder testified that his factual basis for upholding management's decision in Plaintiff's second GFT was that, given that in reviewing the work assignment plan through the People Best Practice Manual, certain things occurred that are necessary for a total rebid, including that more than 50% of the work force would be impacted, either through start times or scheduled days, and that approvals had been received from HR.  Additionally, everyone had 30 days' notice before any changes were made.  (Patten Decl., Exh. "P",  Van Galder Depo. 33:21-34:14.)

/ / /

/ / /

On March 17, 2010, Plaintiff was informed that the investigation into his internal EEO/GFTP complaint of February 12, 2010, was complete and that none of Plaintiff's allegations could be sustained. (Patten Decl., Exh "G", 9-46-49.)

On March 29, 2010, Plaintiff filed a third internal EEO/GFTP complaint regarding his change in duties and shifts assignment. (Patten Decl., Exh "I", 6-27-32.)

On March 31, 2010, Plaintiff received a letter from Van Galder, informing him that he was in receipt of his GFTP complaint. Van Galder threatened  Plaintiff that misuse of the Internal Complaint Process is a conduct issue which can result in discipline, up to and including termination. (Patten Decl., Exh "J", 6-25) Plaintiff was also informed by Van Galder and HR Advisor, Tamra Green, that his grievance was premature and could not be filed until he obtained a permanent position. (Rivera Decl., ¶ 19.) Based upon these threats, Plaintiff was in fear that if he made any further complaints or requests for accommodation he would be at risk of discipline or termination.  (*Id.*)

On October 11, 2011, Plaintiff was offered a permanent position which he immediately grieved, pursuant to Van Galder's instruction, through the internal EEO/GFTP process on October 24, 2011.  (Patten Decl., Exh "K", 6-128; 7-7-10.) On October 27, 2011, Plaintiff received a letter from Van Galder, informing Plaintiff that he had read his GFTP Complaint and Plaintiff's fourth complaint, like the first and third complaint, would not be heard. (Patten Decl., Exh "L", 7-3)

## V.      OBJECTIONS TO EVIDENCE

**Plaintiff objects to the Declaration of Tamara Green as follows:**

Green, ¶ 4: *Impermissible Legal Argument*  Fed. R. Evid. 901  The statement as to "no punitive effect" is a legal argument, as OLCCs are accessed and used to determine an employee's position under the Assignment Effectiveness Policy; *Inadmissible Hearsay,*  Fed. R. Evid. 801, 802 to the extent that Green is testifying to the contents of documents, the statements are

inadmissible hearsay, not subject to any exception. *Best evidence,* Fed. R. Evid. 1001, 1002 to the extent that the statement attempts to testify as to the content of written policies, the statement violates the best evidence rule, which requires the production of the original or under certain circumstances a copy.

Green, ¶5    *Impermissible Legal Argument* Fed. R. Evid. 901  The statement as to the existence of processes neither describes the investigation process nor authenticates any documents setting forth the policy.; *Inadmissible Hearsay,* Fed. R. Evid. 801, 802 to the extent that Green is testifying to the contents of documents, the statements are inadmissible hearsay, not subject to any exception. *Best evidence,* Fed. R. Evid. 1001, 1002 to the extent that the statement attempts to testify as to the content of written policies, the statement violates the best evidence rule, which requires the production of the original or under certain circumstances a copy.

Green ¶6,    *Lacks Personal Knowledge.* Fed. R. Evid. 601, 602, Green testifies to what Van Galder needed without foundation.   *Impermissible Legal Argument* Fed. R. Evid. 901 The statement as to which policy applied to the reorganization is an impermissible legal argument as it presupposes the need to reorganize (i.e., the legitimate business purpose).

Green, ¶7    *Lacks Personal Knowledge.* Fed. R. Evid. 601, 602, Green testifies to whether another person formulated the plan, and who requested an engineering study and when. *Impermissible Legal Argument* Fed. R. Evid. 901, Green testifies as to whether another's actions complied with policy.  *Inadmissible Hearsay,* Fed. R. Evid. 801, 802 and *Best evidence,* Fed. R. Evid. 1001, 1002 to the extent that Green is testifying to the contents of documents, the statements are inadmissible hearsay, not subject to any exception.

Green, ¶¶8-12 *Relevance.* Fed. R. Evid. 401, 402.  Defendant did not use JCATS at any time relevant to this case; therefore the testimony about what JCATS would have produced is irrelevant. *Inadmissible Hearsay,* Fed. R. Evid. 801, 802 and *Best evidence,* Fed. R. Evid. 1001, 1002 to the extent that Green is testifying as to how a computer program (JCATS) operated at any point in time, the evidence is inadmissible hearsay and not the original of the document. *Improper Opinion Testimony* Fed. R. Evid. 701.

Green, ¶13   *Inadmissible Hearsay,*  Fed. R. Evid. 801, 802, *Lack of Personal Knowledge*. Fed. R. Evid. 601, 602.  Green does not state date or time, does not state who gave any policy to Plaintiff.

**Plaintiff objects to the declaration of Kathleen Cline as follows:**

Cline, ¶ 5   *Lack of Personal Knowledge*. Fed. R. Evid. 601, 602.  The declarant does not identify how she obtained the asserted knowledge as to Plaintiff's physiological conditions.

Cline, ¶ 6   *Lack of Personal Knowledge*. Fed. R. Evid. 601, 602,  *Inadmissible Hearsay,* Fed. R. Evid. 801, 802 and *Best evidence,*  Fed. R. Evid. 1001, 1002 to the extent that Cline is testifying to the contents of documents, the statements are inadmissible hearsay, not subject to any exception, and best evidence requires authenticated originals or copies.   *Impermissible Legal Argument*  Fed. R. Evid. 901.  Testimony as to whether Plaintiff exceeded entitlement of FMLA and CFRA and whether the position and shift to which Plaintiff was returned (under bid, ending in 30 days) was identical is legal argument and conclusion.

Cline, ¶ 8,  *Lack of Personal Knowledge*. Fed. R. Evid. 601, 602,  *Inadmissible Hearsay,* Fed. R. Evid. 801, 802 and *Best evidence,*  Fed. R. Evid. 1001, 1002 to the extent that Cline is testifying to the contents of documents, including Plaintiff's doctor's "release", the statements are inadmissible hearsay, not subject to any exception, and must best evidence requires authenticated originals or copies.

Cline, ¶ 9   *Lack of Personal Knowledge*. Fed. R. Evid. 601, 602,  the statements concerning an alleged failure to solicit is speculative.  *Inadmissible Hearsay,*  Fed. R. Evid. 801, 802 and *Best evidence,*  Fed. R. Evid. 1001, 1002 to the extent that the testimony is that the documents did not contain a restriction, the statement is hearsay and best evidence requires the documentation. *Lacks Foundation* Fed. R. Evid. 701, there is no foundation as to how such information was communicated to Plaintiff.

**Plaintiff objects to the Declaration of Van Galder as follows:**

Van Galder, ¶ 5 *Impermissible Legal Argument*  Fed. R. Evid. 901.  Testimony as to whether the reduction of flights caused a need to reduce the RTDs is a legal conclusion as to the proffered legitimate business purpose.

Van Galder, ¶ 6 *Impermissible Legal Argument*  Fed. R. Evid. 901, the conclusion that as to policies being "on point" is legal argument.  *Inadmissible Hearsay,*  Fed. R. Evid. 801, 802 and *Best evidence,*  Fed. R. Evid. 1001, 1002 to the extent that the contents of policies are testified it is hearsay and the document is the best evidence of its contents.

Van Galder, ¶9  *Impermissible Legal Argument*  Fed. R. Evid. 901, the conclusion that actions complied with policies is legal argument.  *Impermissible Legal Argument*  Fed. R. Evid. 901, the conclusion that as to policies being "on point" is legal argument.

Van Galder, ¶10 *Impermissible Legal Argument*  Fed. R. Evid. 901, the conclusion that actions complied with policy is argument.   *Lack of Personal Knowledge*. Fed. R. Evid. 601, 602. The declarant does not identify where in the policy the Engineering report is required, and whether it comes before or after the conclusion that reductions of RTDs must occur.

Van Galder, ¶15, *Relevance* Fed. R. Evid. 401, 402.  Defendant denies Plaintiff was disabled; therefore evidence as to what a yard mule does is irrelevant to any fact of consequence.

Van Galder, ¶16  *Inadmissible Hearsay,*  Fed. R. Evid. 801, 802 and *Best evidence,*  Fed. R. Evid. 1001, 1002 to the extent that the testimony is that the documents contain facts, it is inadmissible hearsay.  *Impermissible Legal Argument*  Fed. R. Evid. 901, testimony as to "considered" appeals is a legal conclusion as to whether Plaintiff engaged in the internal dispute resolution process.

**Plaintiff Objects to the Declaration of Kelly Cunningham as follows:**

Cunningham, ¶ 12, 13  *Impermissible Legal Argument*  Fed. R. Evid. 901.  The conclusion that OAKH was "reorganized" is a legal conclusion in support of a claimed legitimate business purpose.  Testimony as to what the policy requires is argumentative. *Inadmissible Hearsay,*  Fed. R. Evid. 801, 802 and *Best evidence,*  Fed. R. Evid. 1001, 1002 to the extent the testimony concerns the work schedule expressed in documents it is inadmissible hearsay and violates best evidence rule.

Cunningham, ¶ 17, 18, 19  *Lack of Personal Knowledge*. Fed. R. Evid. 601, 602,  the statements concerning notice are without foundation and conclusory.  *Impermissible Legal*

*Argument.* Fed. R. Evid. 901, the statements concerning "ad hoc" and "extra" are undefined and are conclusory.

## VI.    CONCLUSION

Substantial evidence supports Plaintiff's *prima facie* case on each of his claims.  As such, the Court should deny the motion as resolving pretext at summary judgment is disfavored, especially in cases such as this where substantial evidence of pretext is present.  Defendant has failed to meet its burden to demonstrate that it is entitled to judgment as a matter of law; accordingly the motion must be denied.


Respectfully submitted, this October 9, 2013          SMITH PATTEN

                                                        _/s/ Spencer Smith_
                                                       SPENCER SMITH
                                                       DOW W. PATTEN
                                                       Attorneys for Plaintiff Ryan Rivera

PLAINTIFF OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT          12-cv-01098 PJH