# EXHIBIT "A"

# In the Matter Of:

## RIVERA vs. FEDEX

CV12-01098 PJH

## RYAN RIVERA

*June 05, 2013*

*Vol. I*



800.211.DEPO (3376)
EsquireSolutions.com

Case4:12-cv-01098-PJH Document42-2 Filed10/09/13 Page3 of 31

RYAN RIVERA Vol. I                                         June 05, 2013
RIVERA vs. FEDEX                                                    11

1    let me know and I'm happy to accommodate that.

2           The only thing I would ask is that if a question

3    is pending, go ahead and answer it before we go off the

4    record.

5           Does that sound okay?

6       A.   Yeah.

7       Q.   Okay.  To your knowledge today, are you

8    suffering from any physical or mental conditions that

9    would affect your ability to remember events and testify

10   about them?

11      A.   No.

12      Q.   Okay.  And, likewise, to your knowledge -- and I

13   know, I'm assuming you're not a medical doctor -- but to

14   the best of your knowledge, are you taking any

15   medications at all today that would affect your ability

16   to recall events and testify about them truthfully?

17      A.   No.

18      Q.   Okay.  Mr. Rivera, my understanding is you're

19   currently employed by Federal Express Corporation; is

20   that right?

21      A.   Yes.

22      Q.   And do you remember -- I want to say your

23   employment with FedEx began in like maybe November 30th

24   of 1999.  Does that sound correct?

25      A.   Yes.



1       Q.   And were you hired into the company, if you

2   recall, as a handler or a material handler or something

3   like that?

4       A.   Yes.

5       Q.   And do you remember the location that you worked

6   in as a handler?

7       A.   The airport, Oakland Airport.

8       Q.   Okay.  The Oakland Airport.

9            Did you -- if you recall, did you work at a

10  facility at the Oakland Airport referred to as the

11  Oakland Hub?

12      A.   Yes.

13      Q.   Okay.  And is that known within FedEx -- if you

14  know, is that referred to within FedEx as OAKH?

15      A.   Yes.

16      Q.   Okay.  Is it also referred to -- because I've

17  seen some documents and talked to some people out there,

18  is it also referred to as the OAK SK?

19           MR. PATTEN:  Calls for speculation.

20           Go ahead.

21           MR. WILSON:  Q.  Yeah, and, once again, only if

22  you know.  I don't want you to guess or speculate.

23      A.   No.

24           MR. PATTEN:  Same objection.

25           Go ahead.



1       A.    No, I don't know if they changed it to OAK SK.

2             MR. WILSON:  Q.  Have you ever heard the term

3    "OAK SK"?

4       A.    No.  I've seen it on trucks, that's it.

5       Q.    Okay.  But you're not sure what that means?

6       A.    No.

7       Q.    Okay.  That's fine.

8             Then after working for a period of time as a

9    handler, what was your next job at Federal Express?

10      A.    Ramp transport driver, truck driver.

11      Q.    And are you currently working today as a ramp

12   transport driver?

13      A.    Yes.

14      Q.    Do you remember, did you -- was it sometime in

15   2001 -- do you think? -- that you became a ramp transport

16   driver?

17      A.    That sounds right, about right, yeah.

18      Q.    Did you start out as a part-time ramp transport

19   driver?

20      A.    Yes.

21      Q.    And then do you remember approximately when you

22   became a full-time ramp transport driver?

23      A.    It was shortly after that, probably six months

24   or a little longer I went to full time.

25      Q.    And did you work at the OAKH as a ramp transport



1       A.    Yes.

2       Q.    Is it about eight or nine years, if you can

3    approximate?

4       A.    I'd have to see the dates in front of me, but

5    that sounds about correct, if it's an approximation,

6    yeah.

7       Q.    That's fine.

8             Did your job responsibilities as a ramp

9    transport driver during that approximately eight- to

10   nine-year period remain the same throughout that entire

11   period?

12      A.    That's too long of a period to remember so I

13   wouldn't know.

14      Q.    Okay.   What -- describe your job

15   responsibilities, if you can, as a ramp transport driver

16   immediately before you went out on medical leave.  And

17   it's my recollection from reviewing the file that you

18   went out on medical leave -- and I'm talking about the

19   medical leave that ended on January 20th, 2010.  Okay?

20      A.    Okay.

21      Q.    I think that medical leave began on October 20th

22   of 2009.  Does that sound right to you?

23            I think you had your surgery on your knee on

24   October 20th, 2009.  Does that sound right?

25      A.    That sounds about right, yes.



| | |
|---|---|
| 1 | A. 53-footer or 45-footer, trailer. |
| 2 | Q. And when you say you transported freight in, you |
| 3 | know, a trailer, either a 45-footer or 53-footer from one |
| 4 | location to another, can you describe generally -- can |
| 5 | you give an example of the types of locations you would |
| 6 | transport freight to and from? |
| 7 | A. From OAKH to other locations throughout the Bay |
| 8 | Area. I can't give you an exact approximation, but from |
| 9 | Sacramento to San Jose or other places around the Bay |
| 10 | Area, San Francisco, where FedEx does business. |
| 11 | Q. And do you remember approximately or even |
| 12 | precisely -- if you can remember exactly, that would be |
| 13 | great, but if you can't, an estimate would be fine. |
| 14 | Can you remember what your schedule was |
| 15 | immediately before you went out on leave in October 2009 |
| 16 | for your knee surgery? |
| 17 | A. My days were Monday through Friday. |
| 18 | Q. And do you remember what your hours were? |
| 19 | A. At that time, I believe 1:00 to 9:30. |
| 20 | Q. 1:00 p.m. to 9:30? |
| 21 | A. 1:00 p.m. to 9:30, yes. |
| 22 | Q. Okay. And do you remember approximately how |
| 23 | long you worked that schedule? |
| 24 | A. No. It was for a long time. |
| 25 | Q. Do you know if it was more than a year? |



1    Q.    Okay.  Did you, prior to October of 2009, ever
2    have a one-on-one, if you remember, you know, work
3    discussions with Mr. Cunningham concerning the RTD job?
4         A.    No.
5         Q.    Okay.
6         A.    I don't remember.
7         Q.    Did you have -- prior to October of 2009, did
8    you have any negative experiences with Mr. Cunningham?
9         A.    You'd have to clarify "negative experience."
10        Q.    Just situations, for example, where you felt
11   like he treated you unfairly or inappropriately or
12   anything like that?
13        A.    That's a long time, I don't remember if we ever
14   had those type of interactions.
15        Q.    And, yeah, it is a long time and I'm just
16   asking, you know, to the best of your recollection, as
17   you're sitting here today, whether there were any
18   occasions prior to October 2009 at any time where you
19   felt like he treated you unfairly or inappropriately.
20        A.    I wouldn't remember.  I'd have to really think
21   about the past so, no, I wouldn't remember at this time.
22        Q.    That's fine.
23              Prior to October of 2009 when you went out on
24   medical leave, did you have any negative interactions or
25   experiences with Mr. Chu, such as any occasions where you



1   felt like Mr. Chu treated you unfairly or

2   inappropriately?

3        A.    Yes.

4        Q.    You did?

5        A.    Yes.

6        Q.    Can you describe -- well, can you recall how

7   many times you felt that Mr. Chu treated you

8   inappropriately or unfairly prior to you going out on

9   medical leave in October 2009?

10       A.    No, but it was frequently, we would have -- I

11  felt he was treating me unfairly.

12       Q.    And can you describe how he was treating you

13  unfairly, let's say during the year immediately preceding

14  October of 2009.

15       A.    Can you clarify the time line?

16       Q.    Yeah.  From October 2008 to October 2009 when

17  you went out on medical leave, can you describe how, if

18  he treated you unfairly during that one-year period, can

19  you describe how he treated you unfairly?

20       A.    That would be kind of hard to explain.  It was

21  just more of the job duties I felt was -- I was being

22  unfairly given work.  There's a lot of other issues I had

23  with Mr. Chu regarding my duties and working there at

24  FedEx but --

25       Q.    During that one-year period, there were a lot of



Case4:12-cv-01098-PJH Document42-2 Filed10/09/13 Page10 of 31

RYAN RIVERA Vol. I                                         June 05, 2013
RIVERA vs. FEDEX                                                     43

1   other issues?

2        A.   Correct.

3        Q.   Okay.  And I'm interested in knowing what those

4   issues were.

5        A.   Well, I told you one was the duties.  The way he

6   was handing out duties was one.  I really would have to

7   think more about that before going into answer it.

8        Q.   Okay.  So are you able to elaborate at all on

9   how he was unfair in handing out job duties during the

10  one-year period immediately preceding October of 2009?

11       A.   Mostly I was given more work than other people

12  sometimes; wasn't given days off that I requested even

13  though I had time available.  The other ones I don't

14  remember at this time.  I'd have to think more about.

15       Q.   Yeah, and my next question will be besides

16  giving you more work than the other RTD's and not giving

17  you time off you wanted, can you think of any other ways

18  that Mr. Chu was unfair or inappropriate to you during

19  the one-year period immediately preceding your medical

20  leave in October 2009?

21       A.   Most of it had to deal with, from my

22  recollection, was my use of FMLA.  They didn't really

23  want me to use FMLA on some issues, such as seeing the

24  dentist and having a root canal.  And I do remember he

25  was requesting that I shouldn't go out on FMLA for my



800.211.DEPO (3376)
EsquireSolutions.com

Case4:12-cv-01098-PJH Document42-2 Filed10/09/13 Page11 of 31

RYAN RIVERA Vol. I                                         June 05, 2013
RIVERA vs. FEDEX                                                      44

1  knee until after peak season.

2          And at this time I don't remember most of the

3  other issues that I had regarding him because it's been a

4  few years.

5      Q.  Can you remember any other -- can you remember

6  any -- I think you said you can't remember most of the

7  other issues.  Can you remember any of the other issues?

8      A.    Not at this time.  It causes me a lot of

9  problems in my life where I work so I try to avoid

10 remembering those type of issues.  It put me under a lot

11 of stress and pain.  So it's hard for me to do my job or

12 to be home with my wife and day-to-day life when I start

13 to remember these problems I had at work.

14     Q.  So just -- I think I heard your testimony

15 correctly, but currently, as we sit here right now, you

16 can't remember any other issues you had with Mr. Chu

17 besides the ones you identified?

18         MR. PATTEN:  Objection.  Misstates the witness's

19 testimony.

20     A.    I -- I can't remember at the time.  I'm not

21 thinking about them at the time, but if I do, it would

22 bring up a lot of pain for me at the moment so I'd rather

23 not discuss some of the issues I had with Steven Chu,

24 Kelly because it brings up emotions.  And I want to be

25 professional and answer your questions but --



```
 1       Q.   And did Ms. Green participate by telephone?

 2       A.   I believe it was she did not want to come to his

 3   office, so I believe, from what it states there, I do

 4   remember it was something like that.

 5       Q.   That maybe you had her on conference call with

 6   Mr. Cunningham in his office?

 7       A.   Yes, because her office was down the hall or

 8   something like that.  I don't remember exactly.

 9       Q.   And was Tamra Green the HR representative

10   assigned to the Oakland Hub, if you know, on January 21,

11   2010?

12       A.   Yes, I believe she was HR.

13       Q.   Do you know if she was the HR representative

14   assigned to the Oakland Hub in October of 2009?

15       A.   Yes.

16       Q.   Now, it says "Request ignored."  I'm looking at

17   the entry next to January 21, 2010, "Request ignored.  No

18   written policy was provided to me regarding the current

19   action implemented."

20            Does that mean that neither Mr. Cunningham or

21   Ms. Green provided you with a policy under which the

22   reorganization was being implemented?

23            MR. PATTEN:  Objection.  The document speaks for

24   itself.

25            Go ahead.
```



1        A.    Yes.

2              MR. WILSON:  Q.  Okay.  Now, I didn't think it

3    was that ambiguous, but I just wanted to make sure that's

4    what that meant.

5              All right.  When you asked to see a policy, if

6    you recall, what was stated, if anything?

7        A.    Can you ask that again?

8        Q.    Sure.

9              On January 21, 2010 it appears -- I mean, did

10   you ask to see any policy that the reorganization was

11   being conducted pursuant to?

12       A.    Yes.

13       Q.    Okay.  So you made that request?

14       A.    Yes.

15       Q.    Did you make it to both Mr. Cunningham and

16   Ms. Green?

17       A.    Yes.

18       Q.    Okay.  And what was their response, if they had

19   one, if you recall?

20             MR. PATTEN:  We object to this deposition

21   proceeding while the deposition of Mr. Cunningham is

22   still open.

23             Mr. Cunningham left his deposition, got up and

24   walked out, and his deposition's still open.  So for the

25   purposes of this deposition, that this deposition is



1   to see a policy under which the reorganization was

2   conducted, did Mr. Cunningham or Ms. Green have a

3   response to that?

4       A.   Like I believe I typed here, request was ignored

5   for written policy. I don't remember exactly what

6   happened, but I was basically told things while I asked

7   to see documents, like given the run-around I guess.

8       Q.   Okay. So they said something in response, you

9   just can't remember exactly what?

10      A.   Just basically things aren't going so well and

11  basically you have to do what we need to do to continue,

12  or things like we're lucky to have a job and things like

13  that.

14      Q.   Did anybody -- did either Mr. Cunningham or

15  Mr. Green or Ms. Green, tell you that the Oakland Hub had

16  lost 12 flights?

17      A.   No.

18      Q.   Did they -- did either of them tell you that the

19  Oakland Hub had lost any flights?

20      A.   I don't remember that exactly. I do remember a

21  decline on a shift that I wasn't working.

22      Q.   Okay. And which shift was the decline you had

23  heard about a decline on?

24      A.   The created [sic] shift of a.m.

25      Q.   Of a.m.?



800.211.DEPO (3376)
EsquireSolutions.com

1       Q.   Did -- did Mr. Chu's demeanor toward you change

2   when you returned from medical leave on January 20th,

3   2010?

4            I know you talked about -- you testified earlier

5   about ways that he was inappropriate or unfair to you

6   before you went on medical leave.  After you came back

7   from medical leave, did his demeanor or behavior towards

8   you change at all?

9       A.   Yes, it was more rude and more upset than

10  before, and stressed.

11      Q.   And can you elaborate on how he was rude to you?

12      A.   Just he was more demanding, what was going on.

13  I just remember he was very cold and more of a potty

14  mouth than usually before.

15      Q.   Okay.  And did he ever call you after -- at any

16  time did he ever call you inappropriate names?

17      A.   Several occasions, he -- like I said, he had a

18  potty mouth.  He uses the F word frequently.

19      Q.   Okay.  What names did he call you?  What names

20  has he called you?

21      A.   Motherfucker.  Basically, that's how he talks.

22      Q.   Do you know one way or the other whether he

23  talks to other RTD's that way?

24      A.   Yes, he does.  He's pretty much known around the

25  hub for that, yeah.



1      Q.  Did he -- what other names has he called you

2  besides motherfucker?

3      A.  Just he says "Fuck man," stuff, weird stuff like

4  that.

5      Q.  "Fuck man," is that what you said?

6      A.  Yeah.

7      Q.  Can you think of any other name -- did he call

8  you a fuck man, is that what your testimony is?

9      A.  It's the way he would talk to people, yeah, when

10  we were working, where he's very upset.

11      Q.  How many times has he called you, if you can

12  estimate, motherfucker?

13      A.  I can't count.  It's beyond my mathematics, to

14  be honest.

15      Q.  Okay.  Can you think of any other names he's

16  called you?

17      A.  No.  I really don't remember other names other

18  than the F word or the S word.

19      Q.  Did he call you those names both before and

20  after you came back from the medical leave that started

21  on October 2009?

22      A.  Yes.

23      Q.  Okay.  How else, other than, you know, his potty

24  mouth getting worse and him being cold, how else did his

25  demeanor toward you change?



1    A.   He was no longer friendly or -- at all.

2    Basically, he was more cold of a manager, like that.

3    Would just give us our paperwork and tell us what to do

4    and was always watching us, or me, whenever I would do my

5    job.

6    Q.   Do you know whether he became more cold toward

7    other RTD's?

8    A.   I believe he did, but mostly me the most because

9    of coming back from FMLA and causing -- questioning all

10   their -- the policies and stuff and how they were able to

11   change my schedule made him more angry with me, I

12   believe.

13   Q.   Okay.  Can you be any more specific about how he

14   was cold toward you, other than him cussing more?

15   A.   Just overwhelming me with more work or if I

16   needed things, like let's say FMLA for my tooth to have a

17   root canal, he -- you can't get a scheduled time off for

18   that or you can't use a sick day for that, when we used

19   to in the past, pre-scheduled surgery.

20        Even my dentist would give me notes to give to

21   him saying I had a root canal that needed to be done.

22   And, obviously, you're in a lot of pain and you're

23   medically given drugs and your face is numb.

24        And I remember him calling Kathy Cline, who's

25   the HM manager, and them telling me I couldn't take time



# EXHIBIT "B"

Dec 01 09 01:53p      Kathy Cline                                    510-639-3725          p 2

Industrial Work Status Form                                    Privileged and Page 1 of 1
                                                               Confidential

**KAISER PERMANENTE**
OCCUPATIONAL MEDICINE 3555 Whipple Road Union City, CA 94587-1507 Dept: 510-675-4807 Main: 510-784-4000

# Kaiser Permanente Industrial Work Status

Patient Name: Ryan A Rivera                          Date Of Visit: 11/30/09
Medical Record Number: 110002592728                  Date of Injury/Illness: 7/20/2002
Diagnosis: Aftercare Following Surgery For Injury [V58.43B]

Ryan A Rivera was seen in this office

**Full Duty:** Ryan A Rivera can return to work with no restrictions on 1/20/2010

**Modified Work From 11/30/2009 Through 1/19/2010:**
If employer offers modified work as specified below, Ryan A Rivera can return to modified work.

Please note: if employer cannot accommodate these restrictions, Ryan A Rivera must be regarded as being unable to work for this period. Employer/Supervisor - if you have questions, please call our Office at the phone number above.

**Patient has the following restrictions/limitations:**
Occasionally = up to 25% of shift. Intermittently = up to 50% of shift. Frequently = up to 75% of shift.



**Other capabilities or restrictions:**
No driving vehicle with manual transmission. No lifting more than 10 lbs. No climbing.

Generated by CHARLENE MIDORI NIIZAWA MD on 11/30/09
Authorized by CHARLENE MIDORI NIIZAWA MD

http://kaiserpermanente.org

about:blank                                                              11/30/2009

# EXHIBIT "C"

ЄµР - Communication History

**Communications History**

Privileged and

| Date Occurred | Communication Type | Subject | Note | Completed Date |
|---|---|---|---|---|
| 1/18/2010 Phone Call | | EE-Update | Ryan called. His current noted dated 11/30 releases him to RTW 1/20. I told Rayn that since his his last drs appt was 2 mos ago, we would need an updated drs note that releases him to full duty before he can return. i advised him his displacement date is 1/25. | 1/18/2010 |
| 1/26/2010 Phone Call | | EE-Question if future probs | Ryan called. He had questions on what would happen if he had future knee probs. He indicated that while he is released to full duty, his knee is only 30%. I told him that if he has probs, he just needs to bring in an updated note. I also explained if he goes out within 90 days, then it is considered a recurrence and that his LOA would take up where it left off. | |

Print | Close

# EXHIBIT "D"

```
 RUN DATE: 04/01/10          FEDERAL EXPRESS CORPORATION                    PAGE:    1
 RUN TIME: 10:33:12                GFTP COMPLAINT              REPORT: FE-EEP037-R01
                             REGISTRATION NUMBER:  10-ZEBWH
```

COMPLAINANT

```
Ryan L. Rivera                   #388817    Ramp Transport Driver
343 SOLANO AV                               OAK / OAKLAND, CA
HAYWARD          ,CA 94541
H: 510/481-5459                             D.O.H.  01/09/00
                                            D.O.T.

MANAGER      Steven S. Chu                   510/636-2245     94621/OAK/0002

PERS REP     Tamra Green                     510/639-3875     94621/OAK/0002

EMPL REL     Gloria J. Bland                 901/434-6290     38194/MEM/7503
```

COMPLAINT PROCESS DATES:

```
COMPLAINT   ENTRY/APPEAL   RESPONSE    DECISION
--STEP--     --DATE--      --DATE--     --CODE--
STEP 1       02/03/10       0/ 0/ 0
```

```
RUN DATE: 04/01/10          FEDERAL EXPRESS CORPORATION              PAGE:        2
RUN TIME: 10:33:12               GFTP COMPLAINT               REPORT: FE-EEP037-R01
SEQUENCE:                 REGISTRATION NUMBER:  10-ZEBWH    DEPT-LOC: 030-341
```

1    FEDEX policy requests that you have a frank and open discussion
     with your manager before entering the GFT Procedure.

     Have you had this discussion?

              RESPONSE: Y


2    Is this complaint against your own manager or management chain?

              RESPONSE: Y


3    Listed below are issues eligible for the GFT Procedure.
     Enter the one that best describes your complaint.

     L    Letter of discipline, (Performance Reminder, Warning Letter)
     S    Selection decision, or unfair selection process
     D    Demotion
     U    Unfair treatment (Job assignment, Performance Review)

              RESPONSE: S


4    Following is a list of complaint categories.
     Enter the one that best describes your complaint.

     1.  Performance Related          5.  Falsification

     2.  Selection/JCA/LEAP           6.  Leadership Failure

     3.  Vehicle Accident/Safety      7.  Performance Review

     4.  Acceptable conduct           8.  Attendance/Puncuality

              RESPONSE: 2

RUN DATE: 04/01/10          FEDERAL EXPRESS CORPORATION              PAGE:      3
RUN TIME: 10:33:12               GFTP COMPLAINT              REPORT: FE-EEP037-R01
SEQUENCE:                 REGISTRATION NUMBER:  10-ZEBWH     DEPT-LOC: 030-341

5          Following is a list of complaint reasons.
           Enter the one that best describes your complaint.

           1.  Unfair Selection

           2.  LEAP Issues

           3.  JCA Issues

           4.  Seniority Issues (Complaints related to the establishment of
               Seniority List.
           5.  Job Assignments based on Seniority

                    RESPONSE: 1


6          Enter date of management action you are appealing.

                    RESPONSE:  1/29/10


7          Explain why you feel management was unfair.
           Please state in your own words, the details
           regarding your complaint.

           (WHEN THE SCREEN IS FULL, PRESS ENTER FOR ADDITIONAL SPACE)

                    RESPONSE:

I WAS ON FMLA LEAVE WHEN THE WORK ASSIGNMENT PLAN WAS IMPLEMENTED.   I WAS
NOT NOTIFIED OF THE INVOLUNTARY BID PROCESS.   EVEN THOUGH I RETURNED TO
TO WORK WITH NO LIMITATIONS I AM STILL UNDER MEDICAL CARE.   AND MY FMLA IS
STILL ACTIVE AND NOT EXPIRED.   I NOTIFIED MANAGMENT AND HR AND THEY IGNORED
MY BID REQUEST FOR PREFERED PLACEMENT. BASICLY MANAGMENT AND HR TOOK THE

POSITION THAT CONTINOUS SERVICE IS MORE IMPORTANT THEN MY FMLA ON FILE
MEDICAL CONDITION.  I WAS FORCED THOUGH THE INVOLUNTARY BID PROCESS TO
SELECT A JOB THAT WILL DISRUPT MY MEDICAL CARE AND SLOW DOWN MY RECOVERY
TIME.  I WILL NO LONGER BE DRIVING OR WORKING HOURS THAT WILL SUPPORT MY
RECOVERY.  AFTER READING THE POLICY AND READING FMLA FEDERAL LAW I HAVE NO
DOUBT IN MY MIND THE POLICY OR TREATMENT TOWARDS ME IS UNFAIR AND NOT IN
COMPLIANCE.


8        Are there any witnesses to support your claim?

                  RESPONSE: N


9        Is there any documentation to support your claim?

                  RESPONSE: Y


10       Please send a copy of the documentation to your
         Director via comat within 24 hours.

         In addition bring a copy of this documentation
         to the meeting with your manager.


11       To your knowledge have other employees received different treatment
         for the same issue?

                  RESPONSE: N

RUN DATE: 02/15/10     FEDERAL EXPRESS CORPORATION            PAGE:    1
RUN TIME: 09:52:30           GFTP COMPLAINT       REPORT: FE-EEP037-R01
                 REGISTRATION NUMBER:  10-ZEDHB

COMPLAINANT

| | | |
|---|---|---|
| Ryan L. Rivera | #388817 | Ramp Transport Driver |
| 343 SOLANO AV | | OAK / OAKLAND, CA |
| HAYWARD     , CA 94541 | | |
| H: 510/481-5459 | | D.O.H.  01/09/00 |
| | | D.O.T. |

| MANAGER | Steven S. Chu | 510/636-2245 | 94621/OAK/0002 |
|---|---|---|---|
| PERS REP | Tamra Green | 510/639-3875 | 94621/OAK/0002 |
| EMPL REL | Gloria J. Bland | 901/434-6290 | 38194/MEM/7503 |

COMPLAINT PROCESS DATES:

| COMPLAINT<br>--STEP-- | ENTRY/APPEAL<br>--DATE-- | RESPONSE<br>--DATE-- | DECISION<br>--CODE-- |
|---|---|---|---|
| STEP 1 | 02/12/10 | 0/ 0/ 0 | |

```
RUN DATE: 02/15/10        FEDERAL EXPRESS CORPORATION              PAGE:      2
RUN TIME: 09:52:30              GFTP COMPLAINT              REPORT: FE-EEP037-R01
SEQUENCE:              REGISTRATION NUMBER:  10-ZEDHB     DEPT-LOC: 030-341
```

1    FEDEX policy requests that you have a frank and open discussion
     with your manager before entering the GFT Procedure.

     Have you had this discussion?

                   RESPONSE: Y


2    Is this complaint against your own manager or management chain?

                   RESPONSE: Y


3    Listed below are issues eligible for the GFT Procedure.
     Enter the one that best describes your complaint.

     L    Letter of discipline, (Performance Reminder, Warning Letter)
     S    Selection decision, or unfair selection process
     D    Demotion
     U    Unfair treatment (Job assignment, Performance Review)

                   RESPONSE: U


4    Following is a list of complaint categories.
     Enter the one that best describes your complaint.

     1.  Performance Related          5.  Falsification

     2.  Selection/JCA/LEAP           6.  Leadership Failure

     3.  Vehicle Accident/Safety      7.  Performance Review

     4.  Acceptable conduct           8.  Attendance/Puncuality

                   RESPONSE: 2

5        Following is a list of complaint reasons.
         Enter the one that best describes your complaint.

         1.  Unfair Selection

         2.  LEAP Issues

         3.  JCA Issues

         4.  Seniority Issues (Complaints related to the establishment of
             Seniority List.
         5.  Job Assignments based on Seniority

                      RESPONSE: 1


6        Enter date of management action you are appealing.

                      RESPONSE:  2/ 8/10


7        Explain why you feel management was unfair.
         Please state in your own words, the details
         regarding your complaint.

         (WHEN THE SCREEN IS FULL, PRESS ENTER FOR ADDITIONAL SPACE)

                      RESPONSE:

MY GFT WAS NOT CONCIDERED SINCE IT WAS CONCIDERED A WORK ASSIGNMENT.
MY GFT WAS FOR UNFAIR SELECTION IN THE WORK ASSIGNMENT INVOLUNTARY BID
THAT DID NOT TAKE INTO CONCIDERATION MY MEDICAL CONDITION AND FMLA LEAVE
OR DID NOT FOLLOW 4-5 CANDIDATE SELECTION-HOURLY POSITIONS FOR VOLUNTARY
BIDS. SUBSTANTIAL CHANGE IN AN ASSIGNMENT IS DEFINED AS FOLLOWS IF IN ANY

RUN DATE: 02/15/10      FEDERAL EXPRESS CORPORATION        PAGE:    4
RUN TIME: 09:52:30         GFTP COMPLAINT       REPORT: FE-EEP037-R01
SEQUENCE:           REGISTRATION NUMBER: 10-ZEDHB   DEPT-LOC: 030-341

CASE WHERE ANY DAY OF THE WEEK CHANGES BY MORE THAN 2 HOURS, IT IS THE EMPL
OYEE'S CHOICE WHETHER OR NOT TO REMAIN IN THE ASSIGNMENT OR TO BE RELEASED
FROM A CURRENT TIME IN ASSIGNMENT HOLD. AN EMPLOYEE WHO CHOOSES TO BE RELEA
SED MAY BID ON OTHER AVAILABLE ASSIGNMENTS.    I DID NOT CHOOSE TO BE RELEAS
ED. THIS IS IN THE ASSIGNMENT CHANGE PROCESS POLICY UNLESS THE EMPLOYEE IS
UNLESS THE EMPLOYEE IS ABLE TO BID INTO SOME OTHER OPEN ASSIGNMENT, THE REL
EASED EMPLOYEE IS "UNASSIGNED" (OR A "RELIEF", "COVER", OR "FLOATER" EMPLOY
EE). THOUGH MANAGEMENT SHOULD MAKE APPROPRIATE EFFORT TO KEEP THIS EMPLOYEE
ON THE SAME OR AT LEAST SIMILAR DAYS AND HOURS, THE EMPLOYEE IS ASSIGNED T
O COVER WHATEVER OPEN ASSIGNMENTS ARE AVAILABLE.

8      Are there any witnesses to support your claim?

           RESPONSE: N      .

9      Is there any documentation to support your claim?

           RESPONSE: Y

10     Please send a copy of the documentation to your
       Director via ccmat within 24 hours.

       In addition bring a copy of this documentation
       to the meeting with your manager.

11     To your knowledge have other employees received different treatment
       for the same issue?

           RESPONSE: N

RUN DATE: 02/15/10          FEDERAL EXPRESS CORPORATION                    PAGE:    5
RUN TIME: 09:52:30                GFTP COMPLAINT                    REPORT: FE-EEP037-R01
SEQUENCE:              REGISTRATION NUMBER:  10-ZEDHB       DEPT-LOC: 030-341


12        In your opinion what management action would resolve your
          complaint?

        (WHEN THE SCREEN IS FULL, PRESS ENTER FOR ADDITIONAL SPACE)

                        RESPONSE:

POLICY


                *** END OF REPORT FE-EEP037-R01***