1

2

3                                  UNITED STATES DISTRICT COURT

4                                  NORTHERN DISTRICT OF CALIFORNIA

5

6

7   RYAN RIVERA,

                Plaintiff,                          No. C 12-1098 PJH

8
        v.                                          **ORDER GRANTING MOTION FOR**
9                                                   **SUMMARY JUDGMENT**
    FEDEX CORPORATION, et al.,
10
                Defendants.
11   _____/

12        Defendant's motion for summary judgment came on for hearing before this court on

13   October 30, 2013.  Plaintiff Ryan Rivera ("plaintiff") appeared through his counsel, Spencer

14   Smith.  Defendant FedEx Corporation ("defendant" or "FedEx") appeared through its

15   counsel, David Wilson.  Having read the papers filed in conjunction with the motion and

16   carefully considered the arguments and the relevant legal authority, and good cause

17   appearing, the court hereby GRANTS defendant's motion for summary judgment as

18   follows.

19                                         **BACKGROUND**

20        This is an employment case.  At all relevant times, plaintiff was employed as a Ramp

21   Transport Driver ("RTD") for FedEx.  In June 2009, plaintiff injured his left knee.[1]  On

22   October 20, 2009, plaintiff underwent surgery on his knee, and started medical leave on

23   that same day.

24        As is often the case in employment cases, the parties have differing accounts of

25   what occurred after plaintiff went on medical leave.  Plaintiff claims that, on November 30,

26   2009, his treating physician requested workplace accommodations for his knee.  Those

27   _____

28        [1]While the operative first amended complaint ("FAC") alleges that plaintiff "suffered a
     workplace injury" (¶ 10), plaintiff's opposition brief states that the injury occurred "outside of
     work" (Dkt. 42 at 1).

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1 accommodations included no driving vehicles with manual transmissions (to avoid using his

2 injured left knee), no lifting more than ten pounds, and no climbing.  On January 18, 2010,

3 plaintiff spoke to FedEx's HR manager (Kathy Cline), and told her that he would be

4 returning to work with the restrictions articulated in the November 2009 doctor's note.

5 Plaintiff claims that Ms. Cline told him that FedEx would not provide any accommodations,

6 and that if he did not provide a doctor's note that released him to full duty work, he would

7 lose his job.  Plaintiff claims that he obtained a full work release "in order to save his job."

8        FedEx disputes this account, and claims that the November 2009 doctor's note

9 expressly stated that the work restrictions were temporary, and would expire on January

10 19, 2010.  FedEx also denies that plaintiff was ever told that he would lose his job if he

11 requested an accommodation, and cites to an email exchange between plaintiff and Ms.

12 Cline, where Ms. Cline repeatedly asked plaintiff for "medical documentation from [his]

13 treating physician to support the request," noting that the last doctor's note that she had

14 indicated full duty with no restrictions.

15        Regardless, while plaintiff was on leave, FedEx decided to reorganize the RTD

16 workforce at the Oakland hub (referred to as "OAKH"), where plaintiff worked.  FedEx

17 claims that this reorganization was in response to a decrease in the number of FedEx

18 flights at that location, and a corresponding drop in package volume, caused by the

19 recession.  Out of the 17 RTDs at OAKH, eight would remain there, four would be

20 transferred to a nearby facility (referred to as "OAKRO"), and the other five would stay at

21 OAKH as temporary "extras" until full-time positions opened up.  Jobs were assigned by a

22 bidding process, with the order determined by seniority.  Plaintiff was 16th out of 17 in

23 seniority.

24        Plaintiff was not told of this reorganization until he returned to work on January 20,

25 2010.  In the FAC, plaintiff alleges that the other RTDs were informed of the reorganization

26 "weeks earlier," which gave them an advantage because they had more time to explore

27 other job opportunities and request more desirable shifts.  FAC, ¶ 13.  But FedEx claims

28 that the other RTDs were informed less than a week earlier than plaintiff.  The FAC also

2

1  alleges that the reassignment bidding process was "nothing more than a pretext for

2  discrimination and retaliation against plaintiff for taking medical leave."  FAC, ¶ 20.

3       After plaintiff returned to work, he was kept on as an "extra" at OAKH, but his hours

4  and job duties changed.  Instead of working Monday-Friday from 1pm to 9:30pm, he

5  started working Tuesday-Saturday from 4am-1:30pm.  Plaintiff alleges that his new shift

6  "included substantially different and more menial duties," and that "virtually all employees"

7  knew that his new shift was "extremely difficult and without any legitimate business

8  purpose."  FAC, ¶¶ 24-25.  Plaintiff alleges that he made several requests to HR for

9  information about how the bidding process worked, but claims that his requests were

10  "ignored under the pretext of scheduling conflicts" and that he was never given a copy of

11  FedEx's policy regarding reorganizations.  FAC, ¶ 28.

12       After plaintiff returned to work, he pursued an internal grievance.  The FAC refers to

13  this as a "Guaranteed Fair Treatment Protection / Equal Employment Opportunity

14  Employee Packet," or "GFTP/EEO," but FedEx charactertizes these two as separate

15  processes - referring to one as "GFTP" and the other as "IIEO."  FedEx explains that the

16  GFTP allows employment decisions to be reconsidered if the employee believes that a

17  policy was not applied appropriately, and the IIEO allows an employee to challenge alleged

18  discrimination, harassment, or retaliation.  On February 3, 2010, plaintiff filed his first

19  grievance, which was apparently considered both a GFTP grievance and a IIEO grievance.

20  The appeal was denied, which the FAC alleges was "a clear breach of company policy and

21  applicable law," but which FedEx testified was the result of a procedural defect.  Plaintiff

22  filed a second GFTP grievance (but not a IIEO grievance) nine days later, on February 12,

23  2013, and that appeal was considered.  However, FedEx's decision was ultimately upheld

24  by OAKH's managing director (Robin van Galder[2]), who found that the reorganization and

25  the bidding process was in line with company policy.  Plaintiff was informed of this decision

26  _____

27      [2]Van Galder was originally named as a defendant in this case, but was never served,
and plaintiff indicated at the October 30, 2013 hearing that he was dismissing van Galder from

28  the case.  <u>See</u> Dkt. 46.

3

1  on March 17, 2010.

2  On March 31, 2010, plaintiff filed a third GFTP grievance.  This one was not

3  considered, and plaintiff was told that misuse of the grievance process could result in

4  disciplinary action.  Plaintiff also alleges that he was told the grievance was premature, and

5  could not be filed until he obtained a permanent position.  Plaintiff claims that he was "in

6  fear that if he made any further complaints or requests for accommodation he would be at

7  risk of discipline or termination." Dkt. 42 at 21.

8  However, once plaintiff did obtain a permanent position in October 2011 (at

9  OAKRO), he filed another GFTP grievance.  But this grievance was not heard, and FedEx

10  explains that it was not heard because it was duplicative of the previously-filed grievances.

11  Plaintiff ultimately filed administrative charges with the DFEH and EEOC, and

12  received right to sue letters on December 5, 2011 (DFEH) and December 7, 2011 (EEOC).

13  Plaintiff filed this suit on March 5, 2012, and filed the operative FAC on May 9, 2012.  The

14  FAC asserts six causes of action against FedEx: (1) disability discrimination in violation of

15  the Americans with Disabilities Act ("ADA"), (2) retaliation for taking leave under the Family

16  and Medical Leave Act ("FMLA"), (3) disability discrimination under the Fair Employment

17  and Housing Act ("FEHA"), (4) retaliation for taking medical leave under the California

18  Family Rights Act ("CFRA"), (5) intentional infliction of emotional distress, and (6) failure to

19  engage in the interactive process under FEHA.  FedEx now moves for summary judgment

20  on all claims.

**DISCUSSION**

21

22  A.   Legal Standard

23  A party may move for summary judgment on a "claim or defense" or "part of . . . a

24  claim or defense."  Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when there is

25  no genuine dispute as to any material fact and the moving party is entitled to judgment as a

26  matter of law.  Id.

27  A party seeking summary judgment bears the initial burden of informing the court of

28  the basis for its motion, and of identifying those portions of the pleadings and discovery

responses that demonstrate the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Material facts are those that might affect the outcome of the case.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  <u>Id.</u>

Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. <u>Soremekun v. Thrifty Payless, Inc.</u>, 509 F.3d 978, 984 (9th Cir. 2007).  On an issue where the nonmoving party will bear the burden of proof at trial, the moving party may carry its initial burden of production by submitting admissible "evidence negating an essential element of the nonmoving party's case," or by showing, "after suitable discovery," that the "nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." <u>Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.</u>, 210 F.3d 1099, 1105-06 (9th Cir. 2000); <u>see also</u> <u>Celotex</u>, 477 U.S. at 324-25 (moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case).

When the moving party has carried its burden, the nonmoving party must respond with specific facts, supported by admissible evidence, showing a genuine issue for trial. Fed. R. Civ. P. 56(c), (e).  But allegedly disputed facts must be material – the existence of only "some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." <u>Anderson</u>, 477 U.S. at 247-48.

When deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. <u>Id.</u> at 255; <u>Hunt v. City of Los Angeles</u>, 638 F.3d 703, 709 (9th Cir. 2011).

B.     Legal Analysis

     <u>Disability discrimination under the ADA</u>

Claims of disability discrimination under the ADA are analyzed under the burden-shifting framework established in <u>McDonnell-Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1   Generally speaking, a plaintiff's prima facie case of discrimination based on a disability

2   must show that plaintiff: (1) is disabled; (2) is qualified; and (3) suffered an adverse

3   employment action because of his disability.  Snead v. Metro. Prop. & Cas. Ins. Co., 237

4   F.3d 1080, 1087 (9th Cir. 2001).

5       Once a plaintiff establishes a prima facie case of discrimination, the burden shifts to

6   the employer to offer a legitimate, nondiscriminatory reason for the adverse employment

7   decision.  See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142 (2000).

8   An employer's reasons need not rest on true information.  Villiarimo v. Aloha Island Air,

9   Inc., 281 F.3d 1054, 1063 (9th Cir. 2002).  Instead, courts require only that the employer

10  "honestly believed its reasons for its actions, even if its reason is foolish or trivial or even

11  baseless."  Id. (citation and quotation omitted).

12      If the employer meets this burden, the plaintiff must then raise a triable issue of

13  material fact as to whether the defendant's proffered reasons for its actions are a mere

14  pretext for unlawful discrimination.  Hawn v. Executive Jet Mgmt., Inc., 615 F.3d 1151,

15  1155 (9th Cir. 2010).  A plaintiff may do this by producing either direct evidence of

16  discriminatory motive, which need not be substantial, or circumstantial evidence that is

17  "specific and substantial" evidence of pretext.  Godwin v. Hunt Wesson, Inc., 150 F.3d

18  1217, 1221-22 (9th Cir. 1998).  If the plaintiff succeeds in demonstrating a genuine issue of

19  material fact as to whether the reason advanced by the employer was a pretext for

20  discrimination, then the case proceeds beyond the summary judgment stage.  See Reeves,

21  530 U.S. at 143.

22      To meet element (1) of his prima facie case, plaintiff alleges that he "suffered from a

23  physical disability in his knee" and that "his major life functions were seriously impacted,

24  including his ability to walk and stand for long periods."  FAC, ¶ 46.

25      However, defendant has submitted evidence showing that plaintiff's disability was

26  temporary, as he was cleared to work without any restrictions after January 20, 2010.  See

27  Dkt. 23-1, Ex. H (medical record stating that "Ryan A. Rivera can return to work with no

28  restrictions on 1/20/2010"), Ex. I (medical record stating that plaintiff "can return to modified

6

United States District Court

For the Northern District of California

1  work" between November 30, 2009 and January 19, 2010, and "can return to work with no

2  restrictions on 1/20/2010").

3       Plaintiff responds by arguing that those medical releases were obtained only after he

4  was told that he would lose his job if he did not provide a doctor's note releasing him to full

5  duty. See Dkt. 42-7, ¶ 5. Specifically, plaintiff alleges that FedEx HCMP Manager, Kathy

6  Cline, "advised me that FedEx would not provide me with any accommodations and that if I

7  did not provide a doctor's note which released me to full duty I would lose my position with

8  the company," and thus, "[i]n order to save my job, I obtained updated medical

9  documentation which released me to work with no restrictions." Id. Thus, plaintiff

10 essentially argues that his work release was obtained in response to being threatened with

11 his job, and thus does not establish that plaintiff had no disability after January 20, 2010.

12 However, this allegation does not appear in the FAC, and the only evidence supporting

13 plaintiff's version of events is his own declaration, executed on October 9, 2013 – the day

14 on which his opposition to defendant's motion for summary judgment was due.

15      Plaintiff's opposition brief repeatedly cites to a call log prepared by Ms. Cline as

16 further evidence of his job being threatened, but that call log does not support plaintiff's

17 version of events. See Dkt. 42-2, Ex. C. Specifically, the call log contains two entries, the

18 first of which is from January 18, 2010, and states:

19      Ryan called. His current noted [sic] dated 11/30 releases him to RTW 1/20. I

20      told Rayn [sic] that since his his [sic] last drs appt was 2 mos ago, we would

21      need an updated drs note that releases him to full duty before he can return. i

22      advised him his displacement date is 1/25.

23 Id., Ex. C.

24 The second entry is from January 26, 2010, and states:

25      Ryan called. He had questions on what would happen if he had future knee

26      probs. He indicated that while he is released to full duty, his knee is only

27      30%. I told him that if he has probs, he just needs to bring in an updated

28      note. I also explained that if he goes out within 90 days, then it is considered

1    a recurrence and that his LOA would take up where it left off.

2    Id., Ex. C.

3          These call log entries show only that plaintiff was told that he needed an updated

4    doctor's note returning him to full duty before he could return, and that he should bring in

5    an updated note if he was continuing to have problems with his knee.  Also, if plaintiff is

6    arguing that Ms. Cline threatened the loss of his job during these calls in January 2010,

7    then plaintiff's argument is undermined by the fact that his first doctor's note, releasing him

8    to work without restrictions starting on January 20, 2010, was issued after a doctor's visit

9    on November 30, 2009.  Dkt. 23-1, Ex. I.  Plaintiff cannot argue that he obtained a note, in

10   November 2009, releasing him to work in response to a threat made in January 2010.

11         Defendant also submits as evidence a number of emails sent between plaintiff and

12   Ms. Cline relating to his work release status.  See Dkt. 23-2, Exs. GGG, HHH, III.  In these

13   emails, sent between February 16, 2010 and March 2, 2010, Ms. Cline repeatedly asks

14   plaintiff for "medical documentation from your treating physician that indicates you have

15   restrictions and limitations, and what the restrictions and limitations are" so that plaintiff's

16   accommodation requests could be considered.  Id. at Ex. GGG.  Plaintiff first responded

17   that he would not be able to provide documentation until after his doctor's appointment on

18   February 24, 2010, but after that date passed, plaintiff told Ms. Cline that his "Dr says she

19   is not able to provide accommodation requests," and that "[s]he also informed me that the

20   information provided was sufficient to make a accommodation request."  Id., Exs. HHH, III.

21   Ms. Cline responded that "[t]he last note I have from your doctor indicates full duty with no

22   restrictions, therefore the accommodation request will be addressed based on your doctor

23   indicating you have no physical restrictions."  Id., Ex. III.

24         Plaintiff ultimately did not provide any additional evidence of any work restrictions to

25   Ms. Cline, nor does he present any additional evidence from his doctors in opposition to

26   defendant's motion.  During his deposition, plaintiff testified that he did not ask his doctors

27   to put his restrictions in writing, and when asked why he did not do so, he answered that he

28   "didn't think of it."  Dkt. 23-1, Ex. A at 95:5-7, 98:7-13.  Thus, the only evidence before the

United States District Court

For the Northern District of California

1    court that plaintiff had work restrictions after January 20, 2010 comes solely from plaintiff's

2    own recently- prepared declaration.  While the court finds that the declaration is insufficient

3    to create a triable issue of fact that plaintiff actually was disabled after January 20, 2010, it

4    will nonetheless address the entirety of plaintiff's first cause of action.  See also Arteaga v.

5    Brink's, Inc., 163 Cal.App.4th 327, 347 (2008) ("An employer does not have to accept an

6    employee's subjective belief that he is disabled and may rely on medical information in that

7    respect").

8        The parties do not dispute that plaintiff is qualified to do his job, thus meeting

9    element (2) of a prima facie case of disability discrimination.

10       As to element (3), the court finds that plaintiff was reassigned to a less desirable

11   shift, which does constitute an "adverse action."  However, plaintiff has not raised a triable

12   issue of fact as to whether the adverse action was taken because of plaintiff's disability

13   (assuming he was disabled).  Defendant has explained that it reorganized plaintiff's

14   department because of decreased package volume at the Oakland hub, which led to

15   different personnel needs at that hub.  Plaintiff has not presented any evidence tying the

16   adverse action to his disability, so the court finds that plaintiff cannot meet element (3) of a

17   prima facie disability case.  Regardless, the court will go through the McDonnell Douglas

18   burden-shifting analysis in order to fully address plaintiff's claim.

19       Assuming that plaintiff is able to meet all three elements of a prima facie disability

20   discrimination claim, the burden would then shift to defendant to offer a legitimate, non-

21   discriminatory reason for the adverse action.  Here, the court again considers defendant's

22   argument that it reorganized plaintiff's department because decreased package volume at

23   the Oakland hub led to decreased personnel needs.  The court finds that this reason would

24   be sufficient to shift the burden back to plaintiff to show that defendant's proffered reason is

25   a pretext for discrimination.

26       Plaintiff does not clearly identify any evidence showing that the proffered reason for

27   the shift change was pretextual.  Plaintiff does argue that he "has presented sufficient

28   evidence of pretext," but points to only the following facts:  (1) plaintiff's supervisor (Steven

9

United States District Court

For the Northern District of California

1   Chu) "treated him unfairly mostly when dealing with his FMLA," (2) Chu "requested that

2   plaintiff not go out on FMLA for his knee until after peak season," (3) the Oakland hub "was

3   the only facility to have a rebid," (4) plaintiff was not told about the rebid until after he

4   returned from leave, and (5) plaintiff's managers lacked experience with shift re-bids.

5   However, none of these allegations serve to undermine defendant's stated reason for the

6   shift rebid – that a decrease in package volume changed defendant's personnel needs at

7   the Oakland hub.  Thus, the court finds that plaintiff has not raised a triable issue of fact as

8   to whether defendant's stated reason for the adverse action was actually a pretext for

9   discrimination, and thus GRANTS defendant's motion for summary judgment on plaintiff's

10   first cause of action for disability discrimination under the ADA.

11        The court further notes that plaintiff has not separately pled a claim for failure to

12   accommodate under the ADA, so the court will not address any such claim in this order.

13        FMLA Retaliation (interference)

14        As plaintiff points out, when a plaintiff alleges retaliation for exercise of FMLA rights,

15   that claim is properly analyzed as an interference claim under section 2615(a)(1).  See

16   Bachelder v. America West Airlines, Inc., 259 F.3d 1112, 1124 (9th Cir. 2001).  To state a

17   claim for interference, plaintiff must allege the following:  (1) he is an eligible employee; (2)

18   his employer is an employer under the FMLA; (3) he was entitled to take leave; (4) he gave

19   notice of his intention to take leave; and (5) the defendant denied him the benefits to which

20   he was entitled under the FMLA.  Sanders v. City of Newport, 657 F.3d 772, 778 (9th Cir.

21   2011).

22        The parties do not dispute that elements (1) through (4) are met, and dispute only

23   whether defendant denied plaintiff the benefits to which he was entitled under the FMLA.

24   Defendant argues that plaintiff returned to his identical position when he returned from

25   leave, and "remained in that position and shift until early March 2010."  Dkt. 43 at 15.

26   However, as defendant admits, plaintiff was notified of the upcoming shift change

27   immediately after returning from leave, even if the change did not take effect until

28   approximately six weeks later.  Accordingly, the court rejects defendant's argument that

United States District Court

For the Northern District of California

1    plaintiff was restored to an identical position after returning from leave.

2        However, the inquiry does not end there.  The Ninth Circuit has held that, "[a]lthough

3    the FMLA created a statutory right to reinstatement after taking FMLA leave, this right is not

4    absolute."  Sanders, 657 F.3d at 778.  The text of the FMLA itself makes clear that

5    "[n]othing in this section shall be construed to entitle any restored employee to . . . any

6    right, benefit, or position of employment other than any right, benefit, or position to which

7    the employee would have been entitled had the employee not taken the leave."  29 U.S.C.

8    § 2614(a)(3)(B).  However, the burden lies solely with the employer to "establish that he

9    has a legitimate reason to deny an employee reinstatement," as the McDonnell Douglas

10   burden-shifting analysis does not apply to FMLA interference claims.  Sanders, 657 F.3d at

11   778, 780.  To be clear, it is not enough for the employer to show merely that it had

12   "reasonable cause" for not reinstating the employee; it must go further, and show that the

13   employee would not have been employed in the same position even if he had not taken

14   FMLA leave.  Id. at 780-81 (citing 29 U.S.C. §§ 2614(a)(1)(A), (a)(3)(B)).

15       In this case, the court finds that defendant has carried its burden to show that

16   plaintiff would not have been employed in the same position even if he had not taken FMLA

17   leave.   As discussed above, in response to decreased package volume at the Oakland

18   hub, FedEx reorganized all of its RTD staffing at that hub.  Of the 17 RTDs, eight remained

19   at the Oakland hub, four were reassigned to OAKRO, and the remaining five stayed at the

20   Oakland hub as temporary "extras."  Jobs were assigned by a bidding process based on

21   seniority, and plaintiff was 16th out of 17 in seniority.  Importantly, plaintiff's position on the

22   bidding list was not affected by his FMLA leave.  In fact, plaintiff's 91-day medical leave

23   normally would have interrupted his "years of continuous service" level (which resets after

24   any leave longer than 90 days), and would have left him at 17th out of 17 in seniority.

25   However, plaintiff's leave did not affect his seniority, and he was permitted to bid 16th out of

26   17. Thus, defendant has carried its burden to show that plaintiff's shifts would have been

27   reassigned even if he had not taken leave, and as a result, the court GRANTS defendant's

28   motion for summary judgment on plaintiff's second cause of action.

United States District Court

For the Northern District of California

1    <u>Disability discrimination under FEHA</u>

2        To establish a prima facie case of disability discrimination under FEHA, the

3    employee must demonstrate that: (1) plaintiff is a person with a disability or medical

4    condition; (2) defendant made an adverse employment decision; (3) because of plaintiff's

5    disability or medical condition.  <u>See</u> <u>Green v. State of Cal.</u>, 132 Cal.App.4th 97, 110 (2005).

6    If plaintiff can establish a prima facie case, the <u>McDonnell Douglas</u> burden-shifting analysis

7    applies.

8        This claim is substantively the same as plaintiff's first cause of action, for disability

9    discrimination under the ADA, and the court reaches the same result here.  The court finds

10   that plaintiff's declaration is insufficient to create a triable issue of fact that plaintiff actually

11   was disabled after January 20, 2010, and that plaintiff's evidence does not raise a triable

12   issue of fact that any adverse action was taken as a result of plaintiff's disability.  But again,

13   for the same reasons discussed above, even if the court were to assume that plaintiff could

14   establish a prima facie case of disability discrimination, defendant does offer a legitimate

15   business reason for its action, and plaintiff is unable to show that the stated reason is

16   actually a pretext for discrimination.  Thus, the court GRANTS defendant's motion for

17   summary judgment on plaintiff's third cause of action.

18       <u>Retaliation under CFRA</u>

19       The elements of a claim for retaliation in violation of CFRA are: (1) the defendant

20   was an employer covered by CFRA, (2) the plaintiff was an employee eligible to take CFRA

21   leave, (3) the plaintiff exercised his right to take leave for a qualifying CFRA purpose, and

22   (4) the plaintiff suffered an adverse employment action, such as termination, fine, or

23   suspension, because of his exercise of his right to CFRA leave.  <u>Dudley v. Dept. of</u>

24   <u>Transportation</u>, 90 Cal.App.4th 255, 261 (2001).

25       The parties do not dispute that the first three elements of this claim are met.

26   Defendant argues only that "plaintiff cannot prove the 'because of' prong of a prima facie

27   case because . . . it is undisputed that FedEx had a legitimate business reason for

28   changing plaintiff's work assignments."  Indeed, plaintiff's opposition brief makes no effort

12

United States District Court

For the Northern District of California

1    to address the causation element of his CFRA retaliation claim, arguing only that "this

2    [fourth] element is present as plaintiff suffered adverse action when he returned from

3    leave." Dkt. 42 at 5.  As a result, plaintiff has failed to raise a triable issue of fact that his

4    shift reassignment was done "because of" his exercise of right to CFRA leave.

5         Plaintiff's failure to provide any evidence meeting the causation element of his CFRA

6    claim becomes even clearer when applying the McDonnell Douglas burden-shifting

7    analysis.  See Faust v. California Portland Cement Co., 150 Cal.App.4th 864, 885 (2007)

8    (applying McDonnell Douglas to CFRA retaliation claim).  Even if court were to treat the

9    adverse action, by itself (and regardless of its cause), as sufficient to establish element (4)

10   of a prima facie case of retaliation, the burden would then shift to defendant to provide a

11   legitimate, non-discriminatory reason for the adverse action.  And as discussed in the

12   context of plaintiff's discrimination claims, defendant would point to the decreased package

13   volume at the Oakland hub and the corresponding decrease in personnel needs.  This

14   reason would then shift the burden back to plaintiff to show that the stated reason was

15   actually pretextual, which for the reasons discussed above, plaintiff is unable to do.

16   Accordingly, the court GRANTS defendant's motion for summary judgment on plaintiff's

17   fourth cause of action.

18        Intentional infliction of emotional distress

19        The elements of a claim of intentional infliction of emotional distress are (1) extreme

20   and outrageous conduct by the defendant with the intent to cause, or reckless disregard for

21   the probability of causing, emotional distress; (2) the suffering of severe or extreme

22   emotional distress by plaintiff; and (3) actual and proximate causation between the two.

23   Potter v. Firestone Tire & Rubber Co., 6 Cal.4th 965, 1001 (1993).  To be outrageous, the

24   defendant's conduct must be either intentional or reckless, and it must be so extreme as to

25   exceed all bounds of decency in a civilized community.  Id.  However, malicious or evil

26   purpose is not essential to liability.  KOVR-TV v. Superior Court, 31 Cal. App. 4th 1023,

27   1031 (1995).

28        For element (1), plaintiff argues that "[t]hreatening to fire someone if they return from

13

United States District Court

For the Northern District of California

1   a doctor with a medical need for an accommodation is extreme and outrageous conduct."

2   Dkt. 42 at 9.  However, as discussed above, the only evidence that such a threat was

3   actually made comes from plaintiff's own declaration, which contradicts his earlier

4   deposition testimony, that he did not receive written documentation of his continuing

5   disability because he "didn't think of it."  Compare Dkt. 42-7, ¶ 5 with Dkt. 23-1, Ex. A at

6   95:5-7, 98:7-13.  Plaintiff cannot defeat summary judgment with a declaration that

7   contradicts his prior deposition testimony.  Nelson v. City of Davis, 571 F.3d 924, 927-28

8   (9th Cir. 2009).  Aside from the alleged threat of job loss, plaintiff identifies no other

9   "extreme and outrageous" conduct underlying this claim.  Thus, the court GRANTS

10  defendant's motion for summary judgment on plaintiff's fifth cause of action.

11          Failure to engage in the interactive process under FEHA

12          Under FEHA, it is unlawful for an employer to "fail to engage in a timely, good faith,

13  interactive process with an employee to determine effective reasonable accommodations, if

14  any, in response to a request for reasonable accommodation by an employee or applicant

15  with a known physical or mental disability."  Cal. Gov't Code § 12940(n).

16          This claim is premised on plaintiff's requests for accommodation made after he

17  returned from medical leave on January 20, 2010.  As explained above in the context of

18  plaintiff's disability discrimination claim, plaintiff has not raised a triable issue of fact as to

19  whether he was actually disabled after January 20, 2010, as his medical records indicate

20  that he was not, and plaintiff's argument relies entirely on a declaration that contradicts his

21  earlier deposition testimony.  However, even assuming that plaintiff did have a "known

22  physical or mental disability" for FEHA purposes, the court disagrees with plaintiff that "a

23  material issue of fact exists as to who is at fault for the breakdown in the interactive

24  process."  Plaintiff's email exchange with Ms. Cline shows that Ms. Cline repeatedly asked

25  plaintiff for written documentation of any continuing disability, and that plaintiff ultimately

26  was unable to provide such documentation.  Specifically, plaintiff told Ms. Cline that his "Dr

27  says she is not able to provide accommodation requests," and that "[s]he also informed me

28  that the information provided was sufficient to make a accommodation request."  Dkt. 23-2,

Ex. III. Ms. Cline then responded that "[t]he last note I have from your doctor indicates full duty with no restrictions, therefore the accommodation request will be addressed based on your doctor indicating you have no physical restrictions." <u>Id.</u> Thus, the record shows that there was no "breakdown" in the interactive process – Ms. Cline asked for a doctor's note, plaintiff responded that his doctor was not able to provide a note, and Ms. Cline said that plaintiff's accommodation request would be considered based on the doctor's note that was already on file (releasing plaintiff to full duty after January 20, 2010).  Accordingly, plaintiff cannot raise a triable issue of fact as to whether defendant failed to engage in an interactive process, and the court GRANTS defendant's motion for summary judgment on plaintiff's sixth cause of action.  The court further notes that plaintiff's opposition brief appears to separately address a claim for failure to accommodate under FEHA, but because no such claim was asserted in the FAC, the court does not address it here.

## CONCLUSION

For the foregoing reasons, the court GRANTS defendant's motion for summary judgment on all of plaintiff's claims.  The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: December 18, 2013

_____
PHYLLIS J. HAMILTON
United States District Judge

United States District Court

For the Northern District of California

15